631 So.2d 693 (1994)
Everett W. FLETCHER, Mable Melba Fletcher, and Debbie Ann Fletcher, Plaintiffs-Appellees,
v.
Ray LANGLEY, Superior Tire, Inc., Hughes Pumpelly, Allstate Insurance Company, and State Farm Mutual Automobile Insurance Company, Defendants-Appellees.
No. 93-624.
Court of Appeal of Louisiana, Third Circuit.
February 2, 1994.
*694 James J. Cox, Terrell DeWight Fowler, Lake Charles, for Everett W. Fletcher et al.
Maurice L. Tynes, Lake Charles, for Ray Langley et al.
Before DOUCET and KNOLL, JJ., and CULPEPPER[*], J. Pro Tem.
DOUCET, Judge.
This is an appeal from a suit for damages arising from an automobile accident.
On October 28, 1988, Everett Fletcher was driving his 1979 Mercury northward on Louisiana Highway 14 in Lake Charles. He was accompanied by his wife, Mable Fletcher, and his two mentally handicapped adult children. As Mr. Fletcher began to make a right hand turn off Highway 14, his car was struck on the left rear bumper by a Ford F-150 half-ton truck operated by Ray Langley and owned by Superior Tire, Inc. The truck was traveling at about 10 miles per hour. As a result of the accident, Everett Fletcher, 61 years of age, claimed aggravation of a previous back injury and a ruptured disc in his neck. He claims $15,106.75 in medical bills. Mable Fletcher, 71 years of age, alleged neck and back strain, and aggravation of an arthritic condition and a previous surgery. She claims medical bills incurred as a result of the accident totaling $3,783.50. Suit was filed on June 30, 1989, against Ray Langley, Superior Tire, Inc., Hughes-Pumpelly, Allstate Insurance Company, and State Farm Mutual Automobile Insurance Company. The case was tried before a jury on May 30, 1991. The jury awarded the plaintiffs $400 in property damages. No personal injury damages were awarded. Plaintiffs then filed a Motion for New Trial. The motion was granted and a second jury trial was held on *695 December 7, 1992. The second jury found defendants liable and awarded $288.23 in property damage. The jury found no injuries were incurred by the Fletchers as a result of the accident. Plaintiffs appeal.
Plaintiffs argue they were denied their right to a fair and impartial jury. After the second jury returned a verdict against the plaintiffs' personal injury claims, plaintiffs filed a Motion for New Trial averring that the jury foreman, Luther Dupuis, falsely answered voir dire questions as to whether or not he had ever been sued. After a hearing where the juror testified, the trial court denied the motions. The trial court found the juror was not dishonest and the verdict was not affected.
The question presented for our review is whether the trial court committed manifest error when it denied the motion for new trial based on prejudicial error. LSA-C.C.P. art. 1972 states, in pertinent part, the following:
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
* * * * * *
(3) When the jury was bribed or has behaved improperly so that impartial justice has not been done.
At the hearing, Luther Dupuis testified he forgot about a lawsuit filed by plaintiffs' counsel when he turned the claim over to his insurance company. The claim was compromised and dismissed. Mr. Dupuis testified that the suit against him was of little consequence to him, not a source of bias, and that he did not intentionally mislead the court.
The denial of a motion for new trial is discretionary with the trial court and should not be reversed absent an abuse of that discretion. Perkins v. Fontenot, 548 So.2d 369 (La.App. 3 Cir. 1989). We cannot say the trial court erred when it found no intentional juror misconduct. Louisiana jurisprudence does not favor new trials especially when the judgement is supported by the record. Brown v. State Through DOTD, 572 So.2d 1058 (La.App. 5 Cir.1990), on rehearing clarified, 577 So.2d 1226 (La.App. 5 Cir.), writ denied, 581 So.2d 710 (La.1991).
In their answer to plaintiffs' appeal, defendants allege the trial court manifestly erred when it granted plaintiffs' Motion for New Trial following the first jury trial based upon the grounds that the verdict was clearly contrary to the law and the evidence. The trial court, in granting the motion, found that the jury responses in the jury interrogatories were impossible to reconcile with the facts presented at the trial where the jury failed to find someone at fault in causing the accident.
The grant of a motion for new trial is discretionary with the trial court. LSA-C.C.P. art. 1978.
The discretionary power to grant a new trial must be exercised with considerable caution for a successful litigant is entitled to the benefits of a favorable jury verdict. Fact-finding is the province of the jury and a trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility. A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury's factual determinations and must be viewed in that light. Thus the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence.
Gibson v. Bossier City General Hosp., 594 So.2d 1332, 1336 (La.App. 2 Cir.1991).
It is not clear from the verdict sheet whether the jury found negligence on the part of Ray Langley. However, the jury awarded property damages to the plaintiffs. In light of the above stated principles we find the trial court did not abuse its discretion in granting the motion.
Plaintiffs next aver the trial court failed to properly instruct the jury that, if plaintiffs sustained some injuries in the accident, the degree of the injury sustained cannot be measured by the minimal force of the collision.
We have held that the minimal or minor nature of an automobile accident is a fact which may be considered by the jury. Coleman v. U.S. Fire Ins. Co., 571 So.2d 213 (La.App. 3 Cir.1990); Delahoussaye v. State *696 Farm Mutual Auto. Ins. Co., 520 So.2d 891 (La.App. 3 Cir.1987), writ denied, 522 So.2d 561 (La.1987). Therefore, we find the trial court did not err by failing to give plaintiffs' requested jury instruction.
Lastly, plaintiffs urge that the jury committed manifest error in not finding they were injured as a result of the accident. Our evaluation of causation involves consideration of the Fletchers' medical conditions prior to the accident in question and following the accident.
Everett Fletcher suffered from the lumbar disc disease which ultimately required surgery on his lower back in 1974 or 1975. After the surgery he became disabled. Subsequently, his back problems worsened and he was placed on social security disability. He also qualified for and received a handicapped license plate. Mr. Fletcher's preaccident medical history also includes treatment for diabetes, arterial fibrillation, high blood pressure, hypertension, and ulcers. Mr. Fletcher claims the afternoon following the accident he began having pains in his lower back and neck. The evening of the accident he was seen by the emergency room doctor at St. Patrick's Hospital where he received a surgical collar.
On November 9, 1988, he was seen by Dr. Bernauer, an orthopaedic surgeon. He complained of pain in his neck and lower back which radiated into his hip. He informed Dr. Bernauer of his involvement in a vehicular accident and that he had had back surgery. Dr. Bernauer's exam revealed some arthritic changes and some disc degeneration. Dr. Bernauer diagnosed neck and back strain. He recommended Mr. Fletcher have physical therapy. On November 28, 1988, Dr. Bernauer's report indicated Mr. Fletcher's condition was worsening due to complaints that his neck pain was radiating into his upper back. Mr. Fletcher continued to be seen by Dr. Bernauer. On February 22, 1989, Dr. Bernauer ordered CAT scans of the neck and back. The CAT scan of the back revealed a bulging disc meaning that the disc is extending beyond the bone. He explained this can cause pressure on the nerve which runs behind the bone. The CAT scan on the neck also showed areas of possible nerve root irritation. Dr. Bernauer further explained that a normal disc could take more trauma than a disc that has been degenerated. Another CAT scan performed on the neck May 3, 1989, showed, according to Dr. Bernauer, a definite problem. On June 20, 1989, an anterior cervical diskectomy was performed. Records show Mr. Fletcher continued to see Dr. Bernauer through February 5, 1990 when he was released. Dr. Bernauer testified that according to the history Mr. Fletcher gave him, his complaints, and the examination, he felt that the accident caused Mr. Fletcher's injuries.
Mable Fletcher's medical history includes treatment for hypertension, diabetes, cancer of the cervix, asthma, and bronchitis. Mrs. Fletcher underwent anterior cervical diskectomy surgery in 1980. Mrs. Fletcher also claims that the afternoon following the accident she began experiencing neck and back pain. She was treated at St. Patrick's Hospital the afternoon of the accident and was given a cervical collar.
On November 9, 1988, she was examined by Dr. Bernauer. At that time, she complained of neck pain radiating down her left arm to her left hand where numbness was present. She also complained of upper back pain. After viewing X-rays, examining the history given by Mrs. Fletcher that she had had no trouble and had done well following her cervical surgery, Dr. Bernauer determined she had neck strain with a possible herniated disc or nerve root injury. He prescribed physical therapy treatment. He continued to treat Mrs. Fletcher and on December 28, 1988, released her from his care because her pain had decreased. At that point his diagnosis was that she had cervical and thoracic strain.
Mrs. Fletcher returned on February 22, 1989, complaining of intermittent shoulder pain radiating down to her left hand. He scheduled an MRI for February 28, 1989. The MRI showed a fusion at C5-6 and C6-7 from her previous surgery, neural foraminal narrowing at C7-T1, and mild bulging of C3-4 and C4-5 discs. He prescribed a home traction unit. He continued to see her through April 3, 1989, and released her because she stated her pain had decreased.
*697 She returned on July 19, 1989, complaining of neck pain radiating down to her left hand and numbness in her fingers. Ultimately, Mrs. Fletcher underwent an electromyogram, a nerve conduction study (EMG). The EMG suggested, among other things, a C7 nerve root irritation on the left side. Dr. Bernauer's final diagnosis was cervical and thoracic strain superimposed on a neck with degenerative arthritis and previous surgery, and some nerve root compression secondary to arthritis of the lower neck. Dr. Bernauer testified that Mrs. Fletcher would be expected to have some pain in her upper back and neck from her previous surgery, but that her problems were more from arm pain. Thus he believed her injuries were related to the October 1988 car accident.
Dr. Lynn Speight, an internal medicine specialist, has treated Mr. Fletcher for ulcers, hypertension, and diabetes since December, 1987. Her records and testimony reveal Mr. Fletcher complained of back pain as a result of his lumbar disc disease as well as stiffness in both shoulders, and left inner thigh sensory changes since his back surgery. Her records also reveal that he complained of occasional headaches in the cervical area prior to the October 1988 mishap. On cross-examination, Mr. Fletcher admitted he had complained of spasms, left hip pain, and numbness in his left leg prior to the accident. Dr. Speight has also treated Mrs. Fletcher since 1987. Dr. Speight's testimony revealed that Mrs. Fletcher's complaints before the 1988 car accident included muscle spasms in her back radiating up into her neck, pain on the left side of her neck, pain in her left elbow and fingers, with numbness and tingling. These records also reveal that Mrs. Fletcher had fallen in June of 1987, and was still complaining of neck pain from the fall a year later. Dr. Speight's records of August 1988 indicate Mrs. Fletcher complained of left arm pain radiating into her shoulders and neck. Dr. Speight testified that, at the time, she felt Mrs. Fletcher's neck and arm pain could be related to the neck surgery.
Dr. Bernauer's conclusions were based, in part, on the medical histories given to him by Mr. and Mrs. Fletcher. Dr. Speight's testimony and medical records reveal, however, that the plaintiffs suffered from similar complaints before the accident in question. A jury could recognize that the plaintiffs experienced similar complaints, although caused for other reasons, before the accident.
Our evaluation of causation also involves consideration of the nature of the accident. Everett Fletcher testified that he had slowed down for a red light on Highway 14. The traffic light is located at the intersection of Highway 14 and Oak Park Boulevard. After the light changed, he testified he began to make a right hand turn onto General Doolittle Street in order to gain entrance to a gas station when he was hit on the left side of his bumper. According to Mr. Fletcher, the contact caused his vehicle to jump over a concrete drain. He further alleged the contact with the concrete bent his right front wheel. However, no physical evidence was ever submitted into the record to show that the wheel was bent. Mr. Fletcher then pulled into the gas station and pumped gas.
Ray Langley, a salesman for Superior Tire, Inc., testified that he was traveling at a speed of 10 miles per hour in the outside lane of Highway 14 when the accident occurred. He stated it was his intention to change lanes because he was approaching his destination when his right front bumper came into contact with the Fletchers' left rear bumper. According to Mr. Langley, the Fletcher vehicle was moving very slowly at a 45 to 55 degree angle upon impact. Mr. Langley averred that he did not know at the time if he had actually hit the Fletcher vehicle. He testified he heard a spring popping noise but felt no jolt. Mr. Langley continued down Highway 14, turned around and pulled into the gas station where Mr. Fletcher was getting gasoline and examining his bumper. Mr. Langley stated that the only visible sign of damage to the Fletcher vehicle was a loose rubber strip that covers the rear bumper. Mr. Langley testified that no damage was done to the company truck.
The policeman who investigated the accident testified that the Langley vehicle struck the tail end corner of the Fletcher vehicle, causing very light damage. His report indicated there was no damage to the Langley *698 vehicle. No injuries or complaints of the passengers of either vehicle were reported.
The testimony of the policeman corroborates that of Mr. Langley indicating that the collision was minimal. Additionally, the estimate to repair the left bumper and taillight lens totaled $288.23, supporting the proposition that the collision was slight. Both plaintiffs testified that they were wearing seat belts. Neither averred that they were jarred by the contact with the truck. Mr. Langley stated he was unsure whether he had hit the Fletchers. Only Mr. Fletcher testified that the right wheel was bent as a result of his car rolling over a concrete drain. Significantly, no testimony to corroborate the alleged damage to the wheel was tendered. Further, no expert testimony was presented to show whether the type of accident involved in this case could cause plaintiffs' injuries. As stated earlier, it is proper for the jury to consider the minimal nature of the accident. Coleman v. U.S. Fire Ins. Co., supra.
The plaintiff has the burden of proving both his injuries and a causal connection between the injuries and the tort, by a preponderance of the evidence. Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971). When the defendant's negligent act aggravates a preexisting condition or injury, the victim is entitled to compensation for the full extent of aggravation. Perniciaro v. Brinch, 384 So.2d 392 (La.1980). A causal link between the negligent act and the degree of aggravation must be established. Harrigan v. Freeman, 498 So.2d 58 (La.App. 1 Cir.1986).
Cash v. Charter Marketing Co., 607 So.2d 1036, 1039 (La.App. 3 Cir.1992). Based on the evidence presented, the jury's failure to causally connect the injuries to the accident is not clearly wrong.
In this case, two juries doubted that the accident caused the Fletchers' present disabilities or aggravated pre-existing conditions to the extent claimed. Apparently, they concluded the plaintiffs would have suffered the same medical problems without the accident. Conclusions of fact and credibility evaluations will not be disturbed absent manifest error. Reck v. Stevens, 373 So.2d 498 (La. 1979); Canter v. Koehring Company, 283 So.2d 716 (La.1973). It is impossible to know which factual considerations the jury accepted and relied upon to reach their verdict. We have discussed some of the possible considerations. Accordingly, we find there was sufficient evidence in the record to indicate that plaintiffs' injuries were caused by past medical problems and unsuccessful surgeries.
For the foregoing reasons, the judgment appealed from is affirmed. Costs of the appeal are assessed against the plaintiffs.
AFFIRMED.
NOTES
[*] Honorable William A. Culpepper participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.