736 So.2d 916 (1999)
Leola JIMMERSON, et al., Plaintiff's-Appellants,
v.
Thomas Frank REARDEN, et al., Defendants-Appellees.
No. 98-1120.
Court of Appeal of Louisiana, Third Circuit.
March 3, 1999.
*918 Jarvis Jerome Claiborne, Opelousas, for Leola Jimmerson, et al.
Maurice L. Tynes, Lake Charles, for Thomas Frank Reardon, et al.
Carol James Aymond, Jr., Bunkie, Mark A. Jeansonne, Hessmer, for Marilyn Jordan (in cons. case).
BEFORE: YELVERTON, COOKS, and PETERS, Judges.
YELVERTON, J.
Leola Jimmerson appeals the trial court's award of damages to her minor daughter, Leona, for damages Leona sustained as a result of a car accident.

FACTS
On March 15, 1996, Leona was a passenger in a car driven by Alice Harris. Leona was seated in the middle of the back seat of the car. The occupants of the car were on their way home from church service. They turned onto U.S. Highway 165 south from Hickory Flat Road. Thomas Rearden was driving a car that had been traveling on Highway 165 in the same direction that the Harris vehicle was now going. He tried to pass the Harris vehicle, but a car was coming from the opposite direction. When Rearden began to pull back into his lane of travel, he bumped the Harris vehicle. Leona explained that they got bumped off the road and then got back on the road. Trooper Jonathan Odom who investigated the accident described it as very minor.
An ambulance was dispatched to the scene. Three of the passengers in the vehicle rode in the ambulance to Oakdale Community Hospital. X-rays of Leona's back and neck were taken. Leona was given some Motrin and released to go home. It was not until two months after the accident that Leona sought other medical treatment.
She went to the Southwest Louisiana Primary Health Care Clinic on May 3 and May 17, 1996. Thereafter, she sought treatment from Dr. Rick Ortego, a chiropractor, on May 27, 1996. He also took xrays. Dr. Ortego diagnosed her as suffering from post-traumatic cervical strain/ sprain with associated myofascitis syndrome and post-traumatic lumbar strain/ sprain. He treated Leona in his office on several visits and released her on August 1, 1996, finding that she had reached maximum chiropractic improvement. In September 1996 Leona returned to see Dr. Ortego on three more occasions and was again released.
Leona did not see another doctor until October 22, 1997, when she went to see Dr. Richard Harmon. Dr. Harmon's notes indicated that Leona said her pain was slowly improving. No spasm was noted in either her neck or her back. She was given some samples of medicine. She was scheduled to see Dr. Harmon again the day after the trial.
After a trial on November 12, 1997, the trial court found that Rearden was 100% at fault for the accident. Leona was awarded $2,000 in general damages and $1,259.81 for the ambulance bill and the Oakdale Community Hospital bill. Her mother, as the administrator of her minor daughter's estate, appeals these awards.

DAMAGES
In order to recover damages, Leola had to prove by a preponderance of the evidence that (1) Leona sustained injuries, and (2) her injuries were caused by the accident. Myers v. Broussard, 96-1634 (La.App. 3 Cir. 5/21/97); 696 So.2d 88. "The existence of injuries and the causation of those injuries are factual determinations which will not be disturbed on appeal unless they are manifestly erroneous." Id. at 96. "However, once these determinations are made, the assessment of damages is subject to the abuse of discretion standard." Id. "The appropriate *919 test in assessing damages is whether, viewing the evidence in the light most favorable to the defendant, a reasonable trier of fact could have assessed damages as they were assessed." Id.

Special Damages
"Special damages are damages which can be established with reasonable mathematical certainty." Id. The trial court awarded damages only for the ambulance expense and the emergency room expenses at Oakdale Community Hospital. Leola claims that she is also entitled to expenses incurred from the Ortego Chiropractic Clinic, the Southwest Louisiana Primary Health Care Clinic, Dr. Richard Harmon, Thrif-T-Way Pharmacy, and Dr. Mustafa Kajan. Although the trial court found that Leona did suffer some injuries as a result of the accident, it appears from the trial court's reasons for ruling that it found that the evidence failed to establish that any of these subsequent medical expenses were necessitated by the accident.
A plaintiff may recover medical expenses which she incurs as a result of injury. Este' v. State Farm Ins. Companies, 96-99 (La.App. 3 Cir. 7/10/96); 676 So.2d 850. However, a plaintiff must prove that, more probably than not, medical treatment was necessitated by trauma suffered in the accident. Id. When a plaintiff alleges that she has incurred medical expenses and that allegation is supported by a bill, unless there is sufficient contradictory evidence or reasonable suspicion that the bill is unrelated to the accident, it is sufficient to support inclusion of that item in the judgment. Id. This court has also discussed the problems associated with the introduction of medical bills without the testimony of doctors as follows:
This circuit has held that medical bills are not hearsay and allowed a plaintiff to prove his treatment by his testimony and his offer of the medical bills to prove the cost of the treatment after laying the proper foundation. Andres v. Liberty Mut. Ins. Co., 568 So.2d 651 (La.App. 3 Cir.1990) [citing Guillory v. Shelter Mut. Ins. Co., 542 So.2d 850 (La.App. 3 Cir.1989)]. This circuit in Guillory found the plaintiff laid the proper foundation by testifying about her injuries and her actions in seeking treatment to resolve her injuries. The court recognized that the plaintiff was subject to cross-examination as to the reasonableness or relevancy of the medical bills.
Ledet v. National Car Rental System, Inc., 96-1270, p. 6 (La.App. 3 Cir. 6/4/97); 694 So.2d 1236, 1240 (alteration in original).
Bills supporting all items incurred on behalf of Leona were admitted into evidence. With regard to Dr. Ortego's bill, a report from Dr. Ortego was also introduced into evidence. This report indicated that the injuries he treated Leona for were related to the March 15, 1996 accident. There is no evidence to cast doubt on this opinion. Leona returned to Dr. Ortego, after her release, on August 28, 1996, still experiencing neck and back problems. Dr. Ortego treated her on three more occasions and found that due to the nature of Leona's injuries, her symptoms were going to be recurrent. The evidence in the record supports a finding that the expenses incurred by treatment with Dr. Ortego were necessitated by the accident. Therefore, we find it was error not to include the total expense of $2,003 for treatment by Dr. Ortego in the special damage award.
Prior to going to Dr. Ortego, Leona had two office visits at the Southwest Louisiana Primary Health Care Clinic on May 3 and May 17. Leona testified that she went to the Clinic for back and neck stiffness. The bills introduced into evidence confirm this diagnosis. Since Dr. Ortego found Leona to be suffering from these same problems related to the accident on her subsequent visits with him, we find that the evidence establishes that the visits *920 to the Clinic were also necessitated by the accident. These bills for $281 and $26 should have also been included in the special damage award.
A bill from Thrif-T-Way pharmacy for $18.26 for Toradol was also introduced into evidence. Leona testified that the doctor at the Clinic prescribed this medicine. The medication was prescribed by Dr. Miraza who was listed as the referring physician on the records in evidence. It was filled on May 17 which is one of the days Leona was treated at the Clinic. We find that this expense was related to the accident and should have been included in the special damage award.
A $60 bill for the reading of x-rays by Dr. Mustafa Kajan was also admitted into evidence. However, although we know that Leona had x-rays taken at the emergency room and at Dr. Ortego's request, there is no evidence establishing what x-rays were read. No evidence establishes that this bill was related to the accident.
Finally, a bill from Dr. Richard Harmon for services on October 22, 1997, in the amount of $125 was introduced into evidence. Although the history in Dr. Harmon's records indicate that Leona was in a car accident, there is nothing in his records relating his findings to the accident. The record indicates that Leona told Dr. Harmon she was having pain, but he noted no spasm. We also note that this office visit was 1½ years after the accident and a year after her final release from Dr. Ortego on September 26, 1996. The evidence does not establish that this bill was necessitated by the accident.
We find, in other words, that Leola proved medical expenses until Leona's final release from Dr. Ortego on September 26, 1996. This was a little over six months post accident. Inasmuch as the trial judge did not allow medical expenses after the ambulance and emergency room bills on the day of the accident, he evidently found no damages beyond that date. This was clearly wrong as a factual finding and results in an abuse of discretion in the award of damages.

General Damages
This court in Myers, 696 So.2d at 96, (citations omitted), discussed the legal percepts in reviewing general damages as follows:
General damages cannot be fixed with pecuniary precision because they involve mental or physical pain or suffering, inconvenience, loss of intellectual gratification, or other losses of life or lifestyle which cannot be definitively measured in monetary terms. In reviewing awards for general damages, this court is not to decide what it thinks would have been an appropriate award under the circumstances but rather decide whether the award represents an appropriate exercise of discretion by the fact finder. Each award must be analyzed on a case-by-case basis to determine whether it is adequate under the particular facts and circumstances presented by the case under review. It should be noted that reasonable people will often differ on what they feel is a reasonable award for general damages. An appellate court should only raise or lower a general damages award when the award, in either direction, is beyond what a reasonable fact finder could assess for the effects of this particular injury on this particular victim under these particular circumstances.
Leola claims that the award of $2,000 for general damages to her daughter is inadequate. She argues that $20,000 would be more appropriate.
As observed by the trial court, this was a minor accident. X-rays taken after the accident did not reveal any remarkable findings. However, Dr. Ortego indicated that Leona might have intermittent exacerbations of pain and stiffness in the cervical and lumbar regions. Leona testified that she still felt stiff on some mornings.
"The primary considerations in assessing damages are the severity and duration *921 of the injured person's pain and suffering." Francis v. Brown, 95-1241, p. 13 (La.App. 3 Cir. 3/20/96); 671 So.2d 1041, 1049.
Since we have already found that the trial court abused its discretion in failing to award special damages for Leona's treatment with Dr. Ortego since it was related to the accident, it follows that she proved that she continued to have pain and suffering until her final release on August 28, 1996. We find that $7,500 would be a more appropriate award for general damages that Leona suffered post accident.
For the reasons set forth in this opinion, we amend the award of special damages to include the expense from the Ortego Chiropractic Clinic in the amount of $2,003, the expenses from the Southwest Louisiana Primary Health Care Clinic in the amounts of $281 and $26, and the expense from Thrif-T-Way Pharmacy for $18.26. We amend the judgment to increase the award of general damages to $7,500. In all other respects the judgment is affirmed.
AFFIRMED AS AMENDED.