STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

04-539

AUDREY BEVERLY, ET AL.

VERSUS

JOSEPH GUIDRY, ET AL.

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 78845
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE

**********

GLENN B. GREMILLION
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Glenn B. Gremillion and Elizabeth A. Pickett, Judges.

THIBODEAUX, C.J., concurs in part and dissents in part and assigns written reasons.

AFFIRMED.

Edward O. Taulbee, IV
Taulbee & Escott, L.L.C.
P. O. Box 2038
Lafayette, LA 70502-2038
Telephone: (337) 269-5005
Counsel For Defendants/Appellees
    Louisiana Farm Bureau Mutual Insurance Company
    and Joseph Guidry

**Stanton Kyle Sherman**
**111 Mercury Street**
**Lafayette, LA 70503**
**Telephone:  (337) 237-7171**
**Counsel For Plaintiffs/Appellants**
      **Audrey Beverly and Hillman Garrick, Jr.**

GREMILLION, Judge.

In this low-impact automobile accident dispute, plaintiffs, Audrey Beverly and Hillman Garrick, Jr., appeal the trial court's finding that no injuries were sustained from the accident and, therefore, its failure to award damages. The defendants, Joseph Guidry and Louisiana Farm Bureau Mutual Insurance Company, appeal the trial court's judgment that an accident occurred. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On the morning of January 28, 2002, Beverly was illegally parked in a handicapped spot in a Wal-Mart Shopping Center parking lot. Beverly asserts that she and Garrick were sitting in her parked Jeep Cherokee when Guidry backed his Chevrolet pickup truck from his parking space into her car striking the left rear corner. Both Beverly and Garrick claim injuries as a result of this alleged impact. The trial court held that Beverly had proven an accident occurred, but concluded that the minimal force of the impact militated against an award of damages. Both parties now appeal. We will consider whether the trial court erred in finding that an accident occurred and whether it erred in finding that no injury occurred as a result of the accident.

## LAW

As set forth in *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1979), appellate courts may not disturb the factual findings of the trier of fact in the absence of manifest error. *Arceneaux* laid out a two prong test for appellate review of facts:

1

1) The appellate court must find from the record that there is reasonable factual basis for the finding of the trial court, and

2) The appellate court must further determine that the record establishes that the finding is not clearly wrong (manifestly erroneous).

*Id*.

## ACCIDENT

Guidry maintains that the accident did not occur and, further, that the vehicles were in a different area of the parking lot than what the plaintiffs assert. Plaintiffs hired an accident reconstructionist, Richard Fox. Fox testified that, although he could not find anything on Guidry's bumper, he still believed that the damages were consistent with the manner in which the bumpers on the vehicles could have come together. In addition, Beverly and Garrick testified to hearing the impact as it was occurring. After a review of the depositions and the reports, the trial court found that the plaintiffs had carried their burden of proof that there was contact between the vehicles. We find no manifest error in the trial court's conclusion that a contact occurred.

## INJURY

Beverly argues that the trial court's finding that because the contact was so minimal, she and Garrick did not sustain injuries, is erroneous. We disagree. The plaintiff bears the burden of proving, by a preponderance of the evidence, a causal connection between the accident and subsequent injury, which is generally accomplished through medical testimony. *See Petersen v. State Farm Auto. Ins. Co.,* 543 So.2d 109 (La.App. 3 Cir.), *writ denied*, 546 So.2d 1223 (La.1989).

2

The trial court found that the doctors who testified on Beverly's behalf, who concluded that the contact caused her resulting injuries, based their findings on Beverly's erroneous reports that the impact was more significant than the trial court found. We agree. Beverly stresses that it would be erroneous and would risk setting a dangerous "precedent" to conclude that minimal impact accidents necessarily lead to minimal injuries. We do not find that occurred in this case. Moreover, we find it would be an erroneous "precedent" to suggest that anytime a vehicle makes contact with another vehicle, however slight, a plaintiff is automatically entitled to damages because she was able to provide medical testimony that the "accident" was the cause of or aggravated her injuries. In cases where there are no objective signs of injury, a plaintiff's subjective claims of causation, as subsequently related to a medical care provider, would ensure a plaintiff's success whether the claim was valid or not.

The trier of fact is in the best position to determine the extent of the accident and resultant injuries, if any. A trial court or jury can find that a plaintiff would have had the same medical problems if the accident had not occurred. *See Delahoussaye v. State Farm Mut. Auto. Ins. Co.*, 520 So.2d 891 (La.App. 3 Cir.), *writ denied*, 522 So.2d 561 (La.1987). It is also proper for the trier of fact to "consider the minimal nature of the accident." *Fletcher v. Langley*, 631 So.2d 693, 698 (La.App. 3 Cir. 2/2/94), *writ denied*, 635 So.2d 1139 (La. 4/7/94).

The trial court made a factual determination that Beverly's alleged injuries did not result from the contact between the Guidry truck and Beverly's Jeep. This finding was reasonable based on the evidence presented at trial.

3

Beverly saw several physicians and health care providers regarding pain in her neck, shoulder, arm, and her trapezius area. She visited Dr. Karrie Kilgore, her family physician, on January 30, 2002, two days after the accident. Dr. Kilgore diagnosed Beverly with cervical strain. Dr. Kilgore had seen Beverly thirty-five times for various medical complaints since March 15, 1999. She testified that Beverly's complaints of shoulder and arm pain were the same as her complaints before the accident and that Beverly's own description of the intensity of her pain remained the same pre and post-accident. Dr. Kilgore testified that Beverly's shoulder and arm complaints were chronic and would flare up when she lifted something heavy. Although Dr. Kilgore testified that she felt she was exaggerating her complaints following the accident, she still believed that the cervical strain was more probably than not related to the accident of January 28, 2002, and that Beverly's symptoms in her upper left extremity were more probably than not aggravated by the alleged accident.

Beverly also saw Dr. John Humphries, an orthopedic doctor. Dr. Humphries diagnosed her with a neck sprain, post-traumatic headache disorder, and a strain of the left shoulder. Dr. Humphries prescribed medication and physical therapy, and told Beverly she was unfit to work until June 26, 2002, about six months after the accident. The record revealed that Beverly did not inform Dr. Humphries of her prior pain and injuries but only of the January 28, 2002 accident. However, even after Dr. Humphries was apprised of her past conditions, he still believed that it was, more probable than not, that the current condition resulted from the January 28, 2002 accident. Beverly also saw Dr. David Barczyk, a chiropractor; Dr. Alan

4

Appley, a neurosurgeon, who found evidence of cervical spondylosis, which he believed was aggravated by the January 28, 2002 accident; and, Dr. Wayne Lindemann, who diagnosed her with whiplash cervical injury.

Garrick saw Dr. Humphries on February 7, 2002, and he was discharged on June 26, 2002. He received approximately six months of treatment for a neck sprain and a sprain of the upper right back. Garrick also had preexisting degenerative disc disease.

Beverly did not inform all of the numerous doctors who testified on her behalf of her preexisting condition. She merely related to them that she was experiencing neck and shoulder pain following a vehicular accident. A doctor is not obligated to investigate the severity of the accident, and generally takes his patient's word for the precipitating factor leading to the alleged injuries. However, it is the trial court or jury's duty to determine if the injury is causally related to the accident based on the facts presented to it and the credibility of the witnesses. While an appellate court can review the witness testimony, the trial court is in a far better position to assess witness credibility.

Beverly testified that she saw Guidry's Chevrolet pickup truck pull away from the rear of the vehicle and proceed out of the parking lot. Beverly stated that she followed the Guidry vehicle to a Stine store located approximately one-half mile from Wal-Mart. Upon reaching Guidry, Beverly questioned him about why he did not stop after the alleged accident and she contacted the police to report the accident. Beverly herself testified that she did not tell Dr. Humphries about her prior complaints of shoulder pain or surgeries pertaining to her back. The former surgeries

5

in the mid 1980's were a result of a slip and fall in an A & P grocery store. She testified that prior to the surgery she was having pain in the neck and arm. She went on to testify that she never reported having any shoulder or neck pain prior to the January accident because she did not think it was related to the two fusion surgeries in the 1980's. She also testified that the neck and shoulder pain had completely resolved after the surgeries, but went on to testify that in 1991 she filed a claim for disability because of the continued pain in her neck, shoulder, and arm which was keeping her from working. She further admitted that in 1995 she sought treatment from a Dr. Menard for continued problems with her neck. Beverly testified that she lost her job because of the accident, however on cross-examination she admitted she had been reprimanded for being tardy, being outside of her work area, and leaving early. She also testified that, prior to the accident, Dr. Kilgore had restricted her from working for two week periods due to her neck, arm, and shoulder pain. Finally, Beverly admitted she did not have a handicapped parking tag but parked in the spot anyway, which she knows is wrong, but she does anyway from time-to-time.

Garrick testified and described the impact as a "wham." He stated that he had neck and shoulder pain for several months and could not work. He also testified that his pain never got better while under Dr. Humphries' care and that it continued even through the time of trial. Garrick testified that he "caught a little jolt" meaning his body went forward and his head popped back, although he did not strike anything in the vehicle.

Officer Joey Babineuax, the Lafayette police officer who investigated the "accident," testified that he was unable to identify any new damage to the

6

bumpers of either vehicles. Beverly admitted to Officer Babineaux that she had prior damage to the rear of the bumper of the Jeep Cherokee. Guidry also informed the officer that he had prior damage on his rear bumper. The photographic evidence, which depicts the damage Beverly alleges the Guidry's caused, reveals an approximately three inch crease in the far left bumper. There was no testimony regarding the cost of repairs.

Gladys Guidry, Joseph's wife, testified that she and her husband of fifty years left the Wal-Mart parking lot and proceeded to Stine Lumber Company where Beverly informed them that they had bumped her Jeep. She testified that as they were leaving Wal-Mart, her husband proceeded very slowly out of the parking spot because there was a vehicle parked very close to their truck on the left-hand side. Gladys stated she did not feel the truck hit anything and she had no idea that the truck had come in contact with anything. Guidry testified there was some pre-existing damage on left side of the bumper and that nothing occurred on that day

Joseph testified that he was first made aware that someone was claiming that he had hit the Beverly car when he got to the Stine parking lot. He testified that Beverly came running toward him stated that he had hit her car. Joseph testified that he told her he did not hit the car and that Beverly claimed he was lying. Joseph testified that because of the little car to the left he had to wriggle out very slowly "inch by inch" of the parking lot to make sure he had clearance. He stated he did not believe he hit anything and did not feel anything.

At the conclusion of the trial, in its oral reasons for judgment, the trial court stated:

7

As you may know, these are difficult decisions when two parties are saying different versions of what happened. It makes my job harder than normal. But after careful consideration of the testimony and looking at the depositions and looking at the reports, I find that the plaintiff has carried their burden of proof in proving that there was contact between plaintiff and defendant's vehicle. However, I find that the contact was so minimal that plaintiff did not sustain any injury. The plaintiffs' doctor's opinion that the accident caused their injuries are based upon the reports by the plaintiffs that the impact was more significant than I find actually occurred. Therefore, the plaintiffs' claim for general and special damages are denied, and I'm going to divide court costs between the parties.

We find no error in the trial court's determination that this "accident" did not cause the substantial injuries that Beverly and Garrick allege resulted from this contact. Based on the evidence presented at trial, reasonable people could have found that the contact between the Beverly Jeep and the Guidry truck did not result in the injuries claimed by Beverly and Garrick. It was readily established that Beverly had a history of chronic neck and arm pain related to the two fusions in the 1980's. Additionally there was substantial evidence calling into question her and Garrick's credibility.

## CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed equally between the plaintiffs-appellants, Audrey Beverly and Hillman Garrick, Jr. and the defendants-appellants, Joseph Guidry and Louisiana Farm Bureau Mutual Insurance Company.

**AFFIRMED.**

8

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

04-539

AUDREY BEVERLY, ET AL.

VERSUS

JOSEPH GUIDRY, ET AL.

THIBODEAUX, C.J., concurring in part and dissenting in part.

I concur in the majority's decision to affirm the trial court's judgment on the issue of whether an accident occurred. I disagree with the failure of the trial court and the majority to find a causal connection between the claimed injuries and the accident.

The trial court's finding "that the contact was so minimal that plaintiff did not sustain any injury" is incorrect as a matter of law. This legal error impacted its factual finding that no injury occurred and requires a *de novo* review. The law in the third circuit is clear that the degree of injury is not necessarily proportionate to the force of the impact. The trial court's observation contravenes the holding in *Desselle v. LaFleur*, 03-562, p. 6 (La.App. 3 Cir. 2/4/04), 865 So.2d 954, 958 (quoting *Seegers v. State Farm Mutual Auto Ins. Co.*, 188 So.2d 166, 167 (La.App. 2 Cir. 1966)) where we stated:

> It is strenuously urged that the force of impact was so slight it could not have caused the injuries of the nature and extent complained of by the plaintiff, Mrs. Seegers. This argument, in part, is based upon the evidence in the record to the effect that the only damage to the rear of the Seegers automobile was the breaking of the tailpipe bracket

and a small dent in the rear bumper requiring a cost of repair of only $8.88. While it is indisputably true that the impact was slight, we think it would be a dangerous precedent to attempt to measure the degree of injuries in direct proportion to the force of a collision. The testimony of both the medical experts and the lay witnesses established the fact that Mrs. Seegers did sustain some injuries and the minimal force the collision is, therefore, of no material importance.

Furthermore, the trial court was clearly wrong in its finding that "[t]he plaintiffs' doctor's [sic] opinion that the accident caused their injuries are based upon the reports by the plaintiffs that the impact was more significant than I find actually occurred." That is *not* what the doctors' analyses were based upon. Rather, the physicians' conclusions were based upon uncontroverted medical examinations and diagnoses.

In this case, *every* doctor testified that the injuries for which they treated Ms. Beverly were more probable than not related to the January 28, 2002 automobile accident. Dr. Karrie Kilgore testified that Ms. Beverly's previous symptoms could have been aggravated and she was newly diagnosed with cervical strain:

> Q. It was your medical opinion on the date that you diagnosed her with a cervical strain that she did have cervical strain, correct?
>
> A. Yes.
>
> Q. And isn't it true that you prescribed her medication and physical therapy?
>
> A. Not on the first visit. On the first visit I prescribed medication and moist heat and return in two weeks.
>
> Q. Okay. How about the second visit?
>
> A. The second visit was six days later. She was prescribed a different anti-inflammatory, and x-ray of her neck, and physical therapy.
>
> Q. With everything that I've discussed and the medical records in front of you, do you believe more probable than

2

not that the accident of January 28th, 2002 either caused or at least aggravated any condition she had, meaning any symptoms you treated for on those dates, January 30th, 2002, and February 5th, 2002?

A. I agree that it probably aggravated some of her previous existing symptoms.

Q. However, you just testified earlier that she didn't have any previous—you had never diagnosed her with cervical strain, correct?

A. Correct.

Q. Especially localized on the left and going up to the head?

A. Correct.

Testimony from Dr. Barczyk revealed a similar conclusion:

Q. Dr. Barczyk, given the information you gathered from Ms. Beverly, along with your physical examination, as well as the diagnostic testing, with your experience in low-impact crashes, as well as treating the spine, can you tell this Court that your medical opinion is more probable than not that the symptoms you treated Ms. Beverly for were related to the automobile accident of January 28th, 2002.

A. Yes, that is my opinion.

Q. Dr. Barczyk, if Audrey Beverly's previous medical records from her treating physician, Dr. Kilgore, indicated that on August 6th of 2001, she had complaints of left shoulder pain with no history of trauma; that the doctor prescribed anti-inflammatories, and approximately two weeks later Dr. Kilgore indicated in her medical records that the muscular pain had resolved, that wouldn't alter your opinion, would it?

A. No, it wouldn't.

In October 2002, after seeing several other doctors, Ms. Beverly saw Dr. Appley with continued complaints of neck pain and tenderness. After an MRI scan, his proposed treatment included trigger spot injections over a period of time into her spine and neck area for pain management. Dr. Appley testified that he believed that Ms. Beverly's condition was a result of the January 28th, 2002 accident:

3

> Q.   [T]aking everything into account with your examination, the medical evidence you have reviewed, the history you have reviewed, is it still your medical opinion that the symptoms that you treated Ms. Beverly for were more probably than not related to the automobile accident of January 28th, 2002?
>
> A.   I think the symptoms that I treated her for and especially the symptoms in the upper part of the neck were—and again, given the fact that her complaints proximally related to the injury resulted from—at least resulted from or were aggravated by the motor vehicle accident.

The record reflects that the medical evidence and testimony were uncontradicted and established a causal connection between the accident and injuries sustained by Ms. Beverly and Mr. Garrick. The trial judge was manifestly erroneous when he reasoned that the doctors' opinions were based upon reports by the plaintiffs that the impact was more significant than the trial judge found actually occurred. The majority compounds this error by affirming his judgment.

The majority observes correctly that "[t]he plaintiff bears the burden of proving, by a preponderance of the evidence, a causal connection between the accident and subsequent injury, *which is generally accomplished through medical testimony*." While acknowledging this to be the law, the majority inexplicably, and wrongly, concludes that "we find it would be an erroneous 'precedent' to suggest that anytime a vehicle makes a contact with another vehicle, however slight, a plaintiff is automatically entitled to damages because she is able to provide *medical* testimony that the 'accident' was the cause of or aggravated her injuries." (Emphasis supplied). If medical testimony is insufficient or inadequate, what other evidence should there be? That is exactly what the law is. The majority recognizes it, repeats it in its opinion, and yet refuses to apply it.

4

Another glaring misstatement of the law is the majority's suggestion that medically-corroborated subjective complaints can never be the basis of recovery absent objective signs of injury. This bold and incorrect assertion of law is unsupported by any codal, statutory, or jurisprudential authority. In this case, all of the plaintiffs' subjective complaints were buttressed by the opinions of *every* physician and health care provider. The majority suggests that recovery for a subjective injury can occur only if the injury manifests itself in an objective way. By extension, the majority, I suppose, would completely vitiate any recovery in cases where objective signs of an injury may be absent, such as valid psychological injuries and for conditions such as, for example, traumatic neurosis. That suggestion is untenable and inconsistent with Louisiana law.

For the foregoing reasons, I respectfully dissent.