979 So.2d 554 (2008)
Anya N. URSIN, Linda Ursin, and Sean Long on behalf of his Minor Son, Shemar Long
v.
Michael E. RUSSELL, Indian River Transport Company, and Continental Casualty Company.
No. 07-CA-859.
Court of Appeal of Louisiana, Fifth Circuit.
February 6, 2008.
*556 Samuel J. Accardo, Jr., Attorney at Law, LaPlace, Louisiana, for Plaintiff/Appellees.
Gregory W. Roniger, Attorney at Law, Metairie, Louisiana, for Defendant/Appellant.
Panel composed of Judges CLARENCE E. McMANUS, WALTER J. ROTHSCHILD, and FREDERICKA HOMBERG WICKER.
WALTER J. ROTHSCHILD, Judge.
Defendants appeal a trial court judgment awarding damages to plaintiffs in this personal injury case arising from a motor vehicle accident. For the reasons set forth below, we affirm in part and reverse in part.
FACTS AND PROCEDURAL HISTORY
This case arises from a motor vehicle accident that occurred on December 30, 2005. Anya Ursin was operating her 1998 Honda Civic with her mother, Linda Ursin, as the front seat guest passenger and her one year old nephew, Shemar Long, in a car seat in the back seat. Anya was stopped at the intersection of U.S. 61 (known as Airline Hwy.) and LA 3188 (known as Belle Terre Blvd.) when her vehicle was struck from behind by a tractor/truck driven by Michael Russell while in the course and scope of his employment with Indian River Transport Company.[1] On June 6, 2006, plaintiffs, Anya Ursin, Linda Ursin, and Sean Long, on behalf of his minor son, Shemar Long, filed suit against Michael Russell, Indian River Transport Company, and its insurer, Continental Casualty Company, seeking damages as a result of this accident.
Trial of this matter was held on May 14, 2007. At the beginning of trial, the parties made the following stipulations:
1) No claim exceeds the $50,000 threshold amount for a jury trial.
2) Defendants are liable for any damages caused by the accident; the driver, Michael Russell, was in the course and scope of his employment with Indian River Transport Company at the time of the accident; and the liability insurance policy provided by Continental Casualty Company has limits which are in excess of the jurisdictional stipulation that no claim exceeds $50,000.
3) The medical bills and reports for each plaintiff are authentic.
Although the parties stipulated to liability and the authenticity of plaintiffs' medical bills and reports, defendants argued at trial that the accident was so minor that plaintiffs could not have suffered any damages as result of the accident.
At trial, Anya Ursin testified that she was driving her Honda Civic on December 30, 2005 with her mother, Linda Ursin, and nephew, Shemar Long, as guest passengers. She was stopped at a red light when they were suddenly struck from behind by an eighteen-wheeler. She stated that she had her foot on the brake and that she pushed the brake harder as her vehicle was being pushed forward by the truck. Anya[2] identified her vehicle in photographs *557 taken after the accident. She testified that in addition to the damage to the bumper shown in the photographs, she had "damage under the hood from me hitting on the brakes so hard and the car also being pushed with my foot on the brakes." Anya asserted that the accident had more than a minor impact and that it caused her nephew's car seat to "fly" into the back of her seat. She further stated that a harness strap on the car seat actually broke during the accident, but no pictures of the broken harness strap were taken and the car seat was later thrown away.
Anya testified that she went to the hospital via ambulance after the accident where she complained of neck and back pain, and she was advised to consult with her doctor. She stated that she was referred to Dr. Dale, a chiropractor, by her attorney, and she treated with him from January 12, 2006 to July 6, 2006, approximately six months, primarily for neck and back pain. She was treated three times per week at first, but then dropped down to two times per week. In the last month and a half of treatment, she usually went one time per week. Anya testified that during her six months of treatment, her pain was a seven or eight on a scale of one-to-ten, with ten being the worst. However, she also testified that she was not restricted from any type of activities during the time that she was experiencing pain as a result of the accident. She testified that as of the date of trial, she still had neck pain at times. Anya indicated that her medical bills totaled $3,325.00.
On cross-examination, Anya testified that in addition to the black mark on her bumper that can be seen in the photographs, her car had scratches and the undercarriage bumper strap was broken as a result of the accident. Anya admitted that her medical records of treatment with Dr. Dale indicate that she and her mother had mostly the same soft tissue injury complaints and that she and her mother stopped treatment within one day of each other. However, she asserted that she and her mother did not talk about their symptoms prior to treating with Dr. Dale. Anya stated that she stopped treating with Dr. Dale because she had to go to college.
Linda Ursin testified that on December 30, 2005, she was guest passenger in a vehicle driven by her daughter, Anya Ursin, when they were struck by an eighteen-wheeler. She stated that when the accident occurred, Shemar's car seat went into the back of Anya's seat and the strap on his car seat broke, though they did not notice the broken strap until a couple of days later. She indicated that after the accident, Shemar was "just staring till they got ready to come get him out of the car and he started screaming and hollering." Shemar was taken to the hospital by ambulance. Linda stated that as a result of the accident, she suffered injuries to her back, neck, and right shoulder. She testified that she started treating with Dr. Dale three times per week primarily for neck and back pain, and she treated with him until June or July 2006. She stated that she and Anya did not discuss their injuries with each other. She admitted that she and Anya were treated for basically the same injuries and they were discharged within a day of each other.[3]
Linda testified that she saw her family physician, Dr. Turner, on January 3, 2006, and she complained of back pain. She did not tell Dr. Turner that her hip, neck, shoulder or arm were hurting at that time. When she saw Dr. Dale a couple of weeks after the accident, her hip, neck, arm and shoulder had started hurting.
*558 Linda testified that she was in a subsequent accident on February 8, 2006, but she asserted that she did not feel any worse after the second accident. She indicated that the impact in the accident in the present case was greater than the impact in the February 2006 accident. Linda admitted that she went to the hospital as a result of the February 2006 accident, and Allstate paid her $1,500, though she did not make any demand on Allstate for money.
Inette Ursin testified that she is Shemar's mother and Sean Long is his father. She stated that she noticed that a harness strap on Shemar's car seat was broken a couple of days after the accident, so she threw it away. On the date of accident, after Shemar was released from the hospital, they went home. She undressed him to give him a bath and noticed that he had the imprint of the car seat straps on his chest. He was one year old at the time of the accident. After the accident, Shemar was afraid to get into his car seat and would cry, and he sometimes had little "night terrors." She took him to his pediatrician where he was checked out and she was told that they did not find any bodily injury. Although she was not present at the scene of the accident, Inette testified that Shemar did not immediately cry after the accident, but rather he cried "when everybody started coming around him," because he got scared. At the conclusion of Inette's testimony, the parties stipulated that Sean Long is Shemar's biological father and the proper party plaintiff on Shemar's behalf, and that if he were called to testify, his testimony would be similar to Inette's testimony.
The defense called Ross Louque to the stand. Mr. Louque testified that he was an eyewitness to the accident. He stated that both vehicles were stopped and then Mr. Russell looked like he was going to make a right turn and "just bumped them," and it was a slight bump. He did not see any damage. The driver of the Honda got out of her vehicle, looked at it and got back into the vehicle, but she did not appear to be injured in any way.
Michael Russell testified that he was employed as a truck driver by Indian River Transport Company on the date of the accident and he was in the course and scope of his employment at the time of the accident. He was stopped three to four feet behind a red Honda due to a red light at the intersection of U.S. 61 and LA 3188. He turned his wheel to go to the right turn lane and, as he started to "ease off the clutch" and moved about three feet, he felt a very mild bump. Mr. Russell got out of the truck and asked the driver of the Honda if she was hurt, but she did not say anything. He stated that she was checking on the child in the back seat, but the child was not crying and seemed to be fine and content. No one appeared to be hurt. He admitted that the tractor he was driving weighs approximately 17,000 pounds and he believes that a Honda weighs approximately 2,400 to 3,000 pounds.
At the conclusion of trial, the trial judge found that plaintiffs were in fact injured as a result of the accident. She found that Anya Ursin's chiropractic treatment for six months was caused by the accident, and she awarded Anya Ursin $7,500.00 in general damages plus the $3,325.00 she incurred in medical expenses, as well as $501.00 for property damage. With regard to Linda Ursin, the trial judge noted that she was involved in a subsequent accident six weeks after this accident, and the trial court awarded her $3,500 in general damages and 50% of her $4,488.58 medical expenses, which is $2,244.29. With regard to Shemar Long, the trial judge noted that he was thrown forward during the collision *559 but stated that she was not satisfied that the child suffered any injuries other than a jolt. Shemar Long was awarded $2,500 in general damages as well as $916 in medical expenses. Defendants appeal the trial court's judgment.
DISCUSSION
On appeal, defendants assert that the damage awards are manifestly erroneous. They do not specify which damage awards they are contesting, so all of the damage awards will be addressed. Defendants contend that the photographs show minimal damage to the Honda Civic driven by plaintiff, and that the evidence does not establish that any injuries at all were suffered by plaintiffs as a result of this accident. Plaintiffs respond that they have never claimed that this was a major accident, but they still suffered soft tissue injuries and are entitled to recover for them. They further contend that the trial judge's damage awards were not manifestly erroneous or clearly wrong.
Although the parties stipulated to the authenticity of the medical records and referred to plaintiffs' medical records during trial, we note that the transcript reveals that these exhibits were never admitted into evidence. Accordingly, they are not in the record before us and cannot be considered by us on appeal. Nevertheless, after reviewing the testimony and photographs admitted into evidence, we find no manifest error or abuse of discretion in the damages awarded to Anya Ursin and Linda Ursin. However, we find that the general damages awarded on behalf of Shemar Long are excessive and must be reduced.
Defendants assert that the impact in this case was minimal and thus, plaintiffs could not have suffered any injuries as a result of this accident. Whether the accident caused the plaintiffs' injuries is a factual question that is reviewed under the manifest error standard of review. American Motorist Ins. Co. v. American Rent-All, Inc., 579 So.2d 429, 433 (La. 1991). Under the manifest error standard, a reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Chavers v. Travis, 04-0992, p. 8 (La.App. 4 Cir. 4/20/05), 902 So.2d 389, 394.
The trier of fact is in the best position to determine the extent of the accident and resultant injuries, if any. It is also proper for the trier of fact to consider the minimal nature of an accident in order to determine whether or not injuries have been sustained. Beverly v. Guidry, 04-539, p. 3 (La.App. 3 Cir. 12/1/04), 890 So.2d 654, 656; writ denied, 05-476 (La.4/22/05), 899 So.2d 570.
In the present case, Anya Ursin testified that the impact of the accident was more than a minor impact and her car was pushed forward a few feet by the truck. Although Ross Louque testified that the impact was minor, the trial judge indicated that she did not give his testimony much weight since he was not involved in the accident and could only speculate as to the impact felt by the parties. Michael Russell testified that the impact was very mild. However, the trial judge apparently believed that the impact was strong enough to cause injury to plaintiffs.
Although the photographs of the minimal damage to Anya's vehicle suggest that the accident was of low impact, courts have held that soft tissue injuries can occur even in low impact collisions. In Davis v. Martel, 00-1727, p. 7 (La.App. 3 Cir. 7/18/01), 790 So.2d 767, 772, writ denied, *560 01-2399 (La.11/21/01), 801 So.2d 1087, the Third Circuit cited Seegers v. State Farm Mutual Auto. Ins. Co., 188 So.2d 166, 167 (La.App. 2 Cir.1966), wherein the Second Circuit stated:
It is strenuously urged that the force of impact was so slight it could not have caused the injuries of the nature and extent complained of by the plaintiff, Ms. Seegers. This argument, in part is based upon the evidence and the record to reflect that the only damage to the rear of the Seegers' automobile was the breaking of the tail pipe bracket and a small dent in the rear bumper requiring a cost of repairs of only $448.88. While it is indisputable [sic] true that the impact as slight, we think it would be dangerous precedent to attempt to measure the degree of injuries in direct proportion to the force of the collision. The testimony of both the medical expert and the lay witnesses established the fact that Ms. Seegers did sustain some injuries and the minimal force of the collision is, therefore, of no material importance.
Considering the testimony and evidence before us, along with the applicable law, we cannot say that the trial court was manifestly erroneous in determining that the impact of the collision was sufficient to cause injuries to plaintiffs. Accordingly, we must now determine whether the amount of the trial court's damage award to each plaintiff was an abuse of discretion.
General damage awards are reviewed under an abuse of discretion standard. Williams v. Maritime, Inc., 04-625 (La.App. 5 Cir. 11/30/04), 889 So.2d 1055, 1059. Therefore, the role of the appellate court is to review the exercise of discretion by the trier of fact, and the adequacy of award should be determined by facts or circumstances particular to the case under consideration. Otillio v. Entergy Louisiana, Inc., 02-718, p. 4 (La.App. 5 Cir. 12/11/02), 836 So.2d 293, 296. An appellate court may not overturn an award for general damages unless it is so out of proportion to the injury that it shocks the conscience. Moore v. Healthcare Elmwood, Inc., 582 So.2d 871, 879 (La.App. 5 Cir. 06/05/91). Consequently, because of the "great" discretion vested in the trier of fact, an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Wilson v. Allstate Ins. Co., 32,890 (La.App. 2 Cir. 3/1/00), 754 So.2d 374, 375.
At trial, Anya testified that she treated with Dr. Dale for approximately six months for injuries primarily to her neck and back. The trial judge found that Anya was injured, requiring six months of treatment, and that she was entitled to her medical bills in the amount of $3,325.00 and $7,500.00 in general damages. In Jimmerson v. Rearden, 98-1120 (La.App. 3 Cir. 3/3/99), 736 So.2d 916, the plaintiff was injured in a minor car accident, and the Third Circuit found that an award of $7,500 for chiropractic treatment for approximately six months was appropriate. See also Dufrene v. Gaddis, 98-1294 (La. App. 5 Cir. 6/1/99), 738 So.2d 75, 81, writ denied, 99-1867 (La.10/8/99), 751 So.2d 220, wherein this Court affirmed a $9,000 award for an eight month soft tissue injury, finding that it was not so high or low in proportion to the injury that it shocks the conscience.
Considering the record before us and the applicable jurisprudence, we find no abuse of discretion in the trial court's award to Anya Ursin of $3,325 in medical expenses and $7,500 in general damages. Accordingly, we affirm the award of general and special damages to Anya Ursin.
*561 With regard to Linda Ursin's damages, the trial judge believed that she suffered injuries as a result of this accident. Linda testified that she treated with Dr. Dale for approximately six months for injuries primarily to her neck and back. However, Linda was in a subsequent accident on February 8, 2006. The trial judge apparently believed that Linda was less severely injured than Anya in this accident and/or that she was injured in the second accident as well.
In Volion v. Henry, 04-294 (La.App. 5 Cir. 10/26/04), 888 So.2d 265, a woman sustained injuries in an automobile accident, and she went to the emergency room where she was given a muscle relaxer. She sought treatment from a chiropractor one week later for neck and arm pain, and she treated with him three to four times per week for nearly four months until she was involved in a subsequent accident. This Court affirmed the trial court's award of her medical expenses from the date of the accident until the subsequent accident and $6,000 in general damages.
In the present case, Linda testified that she treated with Dr. Dale after this accident until July 7, 2006, but she was involved in another accident on February 8, 2006 during the time of her treatment with Dr. Dale. The trial judge awarded Linda $3,500 in general damages and one-half of her medical bills, which was $2,244.29. Considering the testimony and evidence before us, we find no abuse of discretion in the trial court's award.
Finally, with regard to Shemar Long, the trial judge found that he suffered a "jolt" as a result of the accident. Anya, Linda, and Inette all testified that Shemar's car seat strap was broken as a result of the accident. However, no one testified that Shemar seemed injured as a result of the accident, other than Inette who stated that Shemar had strap marks on his chest on the night of the accident and did not want to get into his car seat after the accident. In fact, Inette testified that Shemar's pediatrician examined him and found no bodily injury. Linda testified that Shemar just stared after the accident and did not cry until they got ready to get him out of the car.
We affirm the award rendered on Shemar's behalf for his medical bills, because it was reasonable for him to be checked out by a doctor after being involved in an accident. However, considering the testimony in this case, we find that the general damage award on behalf of Shemar Long is excessive and an abuse of discretion, because there is insufficient evidence that he was in fact injured.
An appellate court may reduce an award to the highest reasonable amount, only if articulable reasons are found to show that a reasonable trier of fact could not have awarded so much or so little, under all of the circumstances of the case. Westley v. Allstate Ins. Co., 05-100 (La.App. 5 Cir. 5/31/05), 905 So.2d 1127, 1136. Considering the circumstances of this case, we reduce the general damage award to $500, finding that this is the maximum amount that could reasonably have been awarded for any minor effect this accident may have had on Shemar.
Finally, with regard to the property damage award of $501.00, we find no error. The trial judge noted that she did not see a figure on the property damage estimate. Although the record before us indicates that defense exhibit number 2 is a property damage estimate, the document in evidence appears to be incomplete as it only consists of one page and does not contain a figure for the estimate of the amount of property damage. Nevertheless, the parties agreed on the record that the property damage estimate was $501.00. *562 The photographs and testimony support this property damage award. Accordingly, we find no error in the property damage awarded to Anya Ursin.
DECREE
For the reasons set forth above, we reverse the trial court's judgment awarding $2,500 in general damages on behalf of Shemar Long, and we reduce this award to $500. All other damage awards and in all other respects, the judgment of the trial court is affirmed.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] Anya Ursin testified that she was struck from behind by an eighteen-wheeler. Mr. Russell testified that he was driving the tractor portion of the truck, but no trailer was attached. On cross-examination, Anya admitted that she was a little unsure as to whether or not a trailer was attached to the tractor driven by Mr. Russell.
[2] Plaintiffs are referred to by their first names due to the fact that Anya and Linda have the same last name.
[3] Anya was discharged on July 6, 2006 and Linda was discharged on July 7, 2006.