[¡¡THOMAS C. WICKER, Jr., Judge Pro Tempore.
This suit arises out of an automobile accident. Plaintiff, William Lombas III, was backing his car when a milk truck in front of him, also backing up, struck the front of his car. Also named as plaintiffs were his wife, Tammy Lombas, and his three children, who raised claims of loss of consortium. Named as defendants were Southern Foods, Inc., d/b/a Barbe’s Dairy (hereinafter “Barbe’s”), its insurer Royal Insurance Company, and its employee, Keefe Danos, the driver of the truck.
Shortly before trial, Mr. Lombas died of causes unrelated to the accident, and Tammy Lombas, in her capacity as succession representative Rfor the estate of William Lombas III, was substituted as party plaintiff. At the start of trial, Keefe Da-nos was dismissed from the suit.
*1285 Trial by jury was held on August 2 — 4, 1999. At its conclusion, the jury returned a verdict in favor of plaintiffs finding that Keefe Danos was 97% at fault in the cause of the accident. The jury awarded damages as follows: pain and suffering, past— $15,000.00; medical expenses, past — $15,-000.00; lost wages and earning capacity— $12,000.00. The jury further found that Tammy Lombas and her three sons suffered loss of consortium and awarded a lump sum of $ 11,000.00 for those losses.
In accordance with the jury verdict, the trial court rendered judgment in favor of plaintiff, Tammy Lombas, individually and as succession representative for William Lombas, III for $40,740.00. The trial court also rendered judgment in favor of Tammy Lombas, individually and on behalf of her minor children for $10,670.00.
After the denial of their Motion for Judgment Notwithstanding the Verdict on the issue of damages, plaintiffs filed this appeal.
FACTS
Mr. Lombas[1] was an independent contractor for the Times Picayune. On April 12, 1997, he was delivering papers with his wife and brother-in-law, Tillman Carolese. Lombas drove down a narrow lane, and pulled his car behind a Barbe’s milk truck in order to “throw” or deliver a paper. He then began to back up in the lane. The milk truck also began backing up, and it ran into the front of Mr. Lombas’s car.
|4Mr. Lombas finished his route. Shortly after he returned home, he began to experience back and neck pain, and he sought treatment at the West Jefferson Emergency Room. X-rays taken were within normal limits.
On April 14, 1997, Mr. Lombas went to Dr. John Sehiro, a general surgeon, who diagnosed cervical spasm and strain.
On April 25, 1997, Mr. Lombas saw Dr. Narinda Gupta, who practiced anesthesiology and pain management. At that time, Mr. Lombas had complaints of severe pain in his neck, back and shoulders, and he was also suffering from headaches. Upon observation, Mr. Lombas’s gait indicated that he was in pain. On examination, Dr. Gupta found that his upper and mid back muscles were in spasm. Dr. Gupta considered that Mr. Lombas was totally disabled at that time, and he prescribed pain and anti-inflammatory medications, and muscle relaxants. Dr. Gupta also treated Mr. Lombas with trigger point injections to reheve pain. On Mr. Lombas’s next visit of May 23, 1997, Dr. Gupta observed a significant decrease in range of motion and severe muscle spasms of the back. Mr. Lombas saw Dr. Gupta twice in June, with continued complaints of pain.
Mr. Lombas then began treatment with Dr. Robert Fleming, an orthopaedic surgeon. On his first visit of June 23, 1997, Mr. Lombas complained of severe neck pain, and also pain in his lower back which was aggravating but not debilitating. A physical examination revealed muscle spasms in the left neck and discomfort to touch of the lower back. In his medical history, Mr. Lombas denied prior trauma to his neck or back.
On July 11, 1997, Mr. Lombas underwent a Magnetic Resonance Imaging procedure (“MRI”) of the cervical spine. This procedure revealed | ¡¡degenerative changes in Mr. Lombas’s cervical region, which were not severe enough to warrant intervention.
Mr. Lombas continued treatment with Dr. Fleming, and in September he began to complain of increased lower back pain. Mr. Lombas underwent an MRI of the lumber spine, which showed degenerative changes of the lower portion of the lumbar spine, and disc herniation at two levels, which Dr. Fleming stated was more degenerative in nature, but which could have been aggravated by trauma.
*1286 Mr. Lombas sought a second opinion from Dr. Roger Smith, a neurologist. Dr. Smith, in deposition, testified that at that visit, Mr. Lombas exhibited severe lumbar pain radiating into the right leg, with some numbness of that leg. Mr. Lombas was in enough pain to require narcotic medication, and he was unable to work. Dr. Smith viewed the MRI and saw degenerative changes of the disc at L3-4 and L4-5, and some disc herniation at L4-5. Dr. Smith treated Mr. Lombas with muscle stimulation; however, Mr. Lombas stated that this made his pain worse. Mr. Lom-bas "did not return to Dr. Smith for further therapy. With regard to the need for surgery, Dr. Smith stated that he would defer to Dr. Fleming as Mr. Lombas’s treating physician.
In December of 1997, Mr. Lombas still had complaints of pain in his lumbar spine, accompanied by pain in his right leg and buttock, and Dr. Fleming recommended surgical intervention. On February 11, 1998 plaintiff underwent lumbar hemilami-nectomy (partial disc removal) on the right side at L4-5 and L5-S1. Mr. Lombas’s symptoms improved somewhat after the surgery.
IfiMr. Lombas continued with periodic visits to Dr. Fleming, who recommended in June of 1998 that Mr. Lombas undergo another MRI because of continued complaints of back pain. Dr. Fleming reviewed the MRI with Mr. Lombas on June 23, 1998, and noted degenerative changes in the lower back, primarily at L4-5 and L5-S1, and to a lesser degree at L3-4. Mr. Lombas was also losing mobility and had some minor muscle spasm. A second surgery was recommended.
On September 24, 1998, Dr. Fleming performed a lumbar fusion, with bone graft from plaintiffs hip. During followup visits, pain medications and a back brace were prescribed.
During the visit of April 5, 1998, Mr. Lombas reported weight loss and abdominal pain unrelated to his back condition. On May 10, 1998, Mr. Lombas reported gastrointestinal problems. On June 24, 1998, Mr. Lombas died from cancer.
In his deposition, Mr. Lombas stated that he did not have any difficulty with his back prior to the accident. Prior to the accident, he had worked his paper route seven days a week, fifty-two weeks a year. He had been active in athletic activities with his sons, and he had enjoyed trawling and fishing. He had been involved in commercial fishing with his father-in-law, and was in the process of starting a business as a commercial fisherman.
Mr. Lombas stated that in 1991, he was involved in a car accident where he injured his neck, causing him to miss two weeks of work. In 1992, he sustained a hand injury while an employee at a glass company, which required surgery. Evidence at trial also established that Mr. Lombas was treated in 1993 for paralumbar sprain.
|7At the time of the accident, Mr. Lom-bas was 5’9” and approximately 265 pounds. Dr. Fleming advised Mr. Lombas throughout the course of treatment to lose weight; however, Mr. Lombas did not do so until shortly before his death. Dr. Fleming also advised Mr. Lombas to quit smoking cigarettes, to no avail.
Mr. Lombas had stated that as a result of his back injuries, he could no longer work his paper route, trawl or fish, or coach his sons in sports. He could no longer dance with his wife or do mechanical work on his car. The accident also adversely affected his marital relationship with his wife, as well as his personal relationships with his wife and children. These problems lasted until his death.
Tammy Lombas testified that prior to the accident, Mr. Lombas had no problems with his back. Mrs. Lombas’s aunt and uncle, Avery and Debra Broussard, both stated that prior to the accident, Mr. Lom-bas had been very active. Tillman Car-olese, who assisted Mr. Lombas with his paper route and who delivered the papers after Mr. Lombas was involved in the acci *1287 dent, stated that he had often camped and fished with Mr. Lombas, and that Mr. Lombas had no difficulty with his back prior to the accident.
At trial, Dr. Fleming opined that Mr. Lombas’s degenerative disc disease became symptomatic as a result of trauma incurred during the April 12,1997 automobile accident. He concluded that the trauma led to the first surgery, and the first surgery led to the second surgery. At trial, the defense presented evidence to Dr. Fleming that Mr. Lombas had been treated for upper back pain at West Jefferson Hospital in June of 1991 and for paralumbar sprain in October of 1993. Dr. Fleming stated that it was not |sunusual for patients to fail to inform the physician of past injuries when seeking treatment, especially if the patients are in pain at the time. Dr. Fleming stated at trial that since Mr. Lombas had no symptoms of pain in 1994, 1995 and 1996, he did not attach much significance to the prior problems in 1991 and 1993.
Approximately eleven months after the accident, and after the first surgery, Mr. Lombas began treatment with Dr. John Patrick Galloway, a psychologist. Mr. Lombas had complaints of depression, inability to sleep and to concentrate and suicidal thoughts. Mr. Lombas was diagnosed as being depressed, which Dr. Galloway opined was a direct result of the accident, Mr. Lombas’s inability to work, and his uncertainty as to whether he would be able to work in the future. Dr. Galloway also testified that Mr. Lombas told him he had never been prescribed Prozac. On cross examination, defendant introduced evidence to show that Mr. Lombas had been prescribed Prozac for two months by his general physician, eight months prior to the accident, and about one and one-half years prior to treatment with Dr. Galloway.
Evidence was also introduced to show that plaintiff had received prior treatment for depression in 1992 as a result of his hand injury.
ISSUES ON APPEAL
Appellant alleges that the sole issue presented by this appeal is whether the jury abused its discretion in awarding an inadequate amount of money damages. Appellant challenges the awards for pain and suffering, for past medical expenses, and for lost wages and earning capacity.
| gGENERAL DAMAGES
Our standard of review of an award of damages was set forth by the Louisiana Supreme Court in the case of Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340-1341 (La.1993), as follows:
Our jurisprudence has consistently held that in the assessment of damages, much discretion is left to the judge or jury, and upon appellate review such awards will be disturbed only when there has been a clear abuse of that discretion, Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977). And, “[i]t is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review be considered either excessive or insufficient,” Reck v. Stevens, 373 So.2d 498, 501 (La.1979). Appellate courts review the evidence in the light which most favorably supports the judgment to determine whether the trier of fact was clearly wrong in its conclusions. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Before an appellate court can disturb the quantum of an award, the record must clearly reveal that the jury abused its discretion. In order to make this determination, the reviewing court looks first to the individual circumstances of the injured plaintiff. Only after analysis of the facts and circumstances peculiar to the particular case and plaintiff may an appellate court conclude that the award is inadequate. See Reck v. Stevens, supra; Cariere v. State Farm Insurance Co., 467 So.2d 867 (La.App. 2d Cir.1985).
*1288 Prior awards under similar circumstances serve only as a general guide. If the appellate court determines that an abuse of discretion has been committed, it is then appropriate to resort to a review of prior awards, to determine the appropriate modification of the award. In such review, the test is whether the present award is greatly disproportionate to the mass of past awards for truly similar injuries. See, Reck v. Stevens, supra; Wactor v. Pickens Lumber Co., 505 So.2d 815 (La.App. 2d Cir.1987), writ denied, 508 So.2d 827 (La.1987). In instances where the appellate court is compelled to modify awards, the award will only be disturbed to the extent of lowering or raising an award to the highest or lowest point which is reasonably within the discretion afforded the trial court. American Motorist Insurance Company, Inc. v. American Rent-All, Inc., 579 So.2d 429 (La.1991); Scott v. Hospital Service District No. 1 of the Parish of St. Charles, 496 So.2d 270 (La.1986); Carollo v. Wilson, 353 So.2d 249 (La.1977); Coco v. Winston Industries, Inc., supra.
ImWe have reviewed the record in this case, and we find that the award in this matter is below that which a reasonable trier of fact could assess.
Defendants allege that the $15,000.00 is adequate, because the jury could have found from the evidence presented that Mr. Lombas suffered only an aggravation of a pre-existing back condition, and that his back pain and subsequent surgeries were not caused by the accident.
' The testimony at trial established that Mr. Lombas was an overweight man with degenerative back problems, which were asymptomatic prior to the accident. The accident occurred on April 12, 1997 and the plaintiff died of''unrelated causes on June 24, 1999, two years later. During those two years, Mr. Lombas underwent two back surgeries, the second occurring nine months prior to his death. Mr. Lom-bas experienced pain from the time of his accident until the second surgery, and he continued with complaints of pain even after that surgery. In addition, Mr. Lom-bas had a depressive disorder, for which had been treated in the past. Eleven months after, the accident, Mr. Lombas sought treatment for depression, which was attributed to his pain and his inability to work. From the time of the accident until his death, Mr. Lombas was never able to return to work, to fish, or to participate in sports with his sons.
Defendants argue that plaintiffs failed to prove that Mr. Lombas’s back injuries were caused by the accident and not by separate, intervening causes. Defendants note that the MRIs showed Mr. Lombas had preexisting degenerative disc disease, and that he had been treated for depression prior to the accident.
|uIn Roig v. Travelers Ins. Co., 96-164 (La.App. 5 Cir. 12/11/96), 694 So.2d 362, writ denied, 97-0721 (La.5/1/97), 693 So.2d 739, we said:
It is a settled rule of law that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Orgeron v. Prescott, 636 So.2d 1033: Perniciaro v. Brinch, 384 So.2d 392, 395 (La.1980). When the tortfeasor’s conduct aggravates a pre-existing condition, the. tortfeasor must compensate the victim for the full extent of the aggravation. Orgeron v. Prescott, 636 So.2d at 1040; Lasha v. Olin Corp., 625 So.2d 1002, 1006 (La.1993).
There is a legal presumption that a medical condition producing the disability is presumed to have resulted from the accident if, before the accident, the injured person' was in good health, but shortly after the accident the disabling condition manifested itself. Housley v. Cerise, 579 So.2d 973 (La.1991). In this 'case, the evidence at trial established that Mr. Lom-bas had no difficulty with his back prior to the accident. He was able to work his paper route seven days a week, that he *1289 was able to fish and that he was able to coach his children in sports. After the accident he was unable to do any of these things.
Defendants argue that plaintiffs could not utilize the presumption of causation because Mr. Lombas had failed to tell his treating physician of his two prior back injuries in 1991 and 1993, both of which appeared to have resolved in a relatively short period of time. However, Dr. Fleming testified that Mr. Lombas’s back condition was made symptomatic by the accident at issue, and that the accident led to the first surgery and the failure of the first surgery led to the second surgery. Dr. Fleming was informed at trial with the evidence of the two prior back injuries, and was asked if this evidence | ^affected his diagnosis. He stated that given the fact that Mr. Lombas had been symptom free for 1994, 1995, 1996 and up to the accident, he felt that those prior injuries were not the cause of Mr. Lombas’s symptoms. Defendants presented testimony, medical or otherwise, to rebut this conclusion.
If the plaintiff makes that showing that the injured person was in good health to utilize the presumption of causation, the burden shifts to the defendant to show some other particular incident that could have caused the injury in question. Hous-ley v. Cerise, supra. Defendants presented no such evidence in this case. Accordingly, we find that the accident caused Mr. Lombas’s condition to become symptomatic, necessitating the two surgeries.
We have conducted a review of pri- or awards for past pain and suffering to determine the appropriate modification of this award, and have found the following cases.
In Oswalt v. State, Dept. of Transp. and Development, 93-850 (La.App. 3 Cir. 3/30/94), 640 So.2d 388, writ denied, 94-1106 (La.6/24/94), 641 So.2d 207, plaintiff suffered a back injury after a car accident; he had a preexisting condition of spondylo-listhesis that became symptomatic after the accident. He died four years after the accident from unrelated causes. The plaintiff underwent one surgery and suffered from pain until his death. The court of appeal rendered a general damage award for past pain and suffering of $75,-000.00.
In Mathews v. Dousay, 96-858 (La.App. 3 Cir. 1/15/97), 689 So.2d 503, the plaintiff suffered a herniated disc in an automobile accident. The accident caused or aggravated the cervical disc condition. Eight months |13after the accident, pláintiff underwent a spinal fusion surgery. Plaintiff was released to work one year after the accident, with a ten percent permanent impairment rating. On appeal the jury award of $10,000.00 for past, present and future pain and suffering was increased to $50,000.00. A $5,000.00 award for loss of enjoyment of life was affirmed.
In Baker v. Freeman, 97-604 (La.App. 3 Cir. 10/29/97), 702 So.2d 1140, plaintiff sustained injury in a car accident. Plaintiff suffered from preexisting spondylolysis, which became symptomatic as a result. At the time of trial, plaintiff was facing a fusion surgery, with an anticipated recovery period of one year. The jury at trial awarded general damages of $12,000.00, which was increased to $50,000.00 by the court of appeal.
In this ease, the plaintiffs asymptomatic back condition was made symptomatic by the automobile accident. The plaintiff suffered two years of pain, and two back surgeries before his death. We find that the lowest point which is reasonably within the discretion of the trial court is $50,-000.00. Accordingly, we amend the judgment of the trial court to award to plaintiffs $50,000.00 for Mr. Lombas’s past pain and suffering.
 Plaintiffs next allege that the jury erred in its award of past medical expenses. A tortfeasor is required to' pay for medical treatment of his victim, even for overtreatment or unnecessary treat *1290 ment, unless such treatment was incurred by the victim in bad faith. Orgeron v. Prescott, 93-926 (La.App. 5 Cir. 4/14/94), 636 So.2d 1033, writ denied, 94-1895 (La.10/28/94), 644 So.2d 654. Thus, a trier of fact is in error for failing to award the full amount of medical expenses proven by a victim. Sumrall v. Sumrall, 612 So.2d 1010, 1014 (La.App. 2d Cir.1993). A jury errs by not | uawarding the full amount of medical expenses incurred as a result of injuries caused by the accident when the record demonstrates that the victim has proven them by a preponderance of the evidence. Revel v. Snow, 95-462 (La.App. 3 Cir. 11/2/95), 664 So.2d 655, writ denied, 95-2820 (La.2/2/96), 666 So.2d 1084.
In this case, plaintiffs introduced into evidence a summary of medical expenses totaling $58,994.22. Defendants did not introduce any evidence to rebut this list; instead, defense counsel admitted that the parties were in agreement as to the amount of the medicals with the exception of the bill presented by Dr. Fleming, in which there was a disagreement of $2,000.00. (Dr. Fleming’s charges were listed in the summary as $19,410.00.) A statement from the Westside Orthopaedic Clinic, where Dr. Fleming practiced, corroborates the summary presented. The disagreement between the parties at trial was whether the medical expenses were necessitated by the accident. We have concluded that plaintiffs back injury was caused by the accident, and therefore the medical expenses associated therewith were incurred as a result of the accident. Therefore, we find that plaintiff is entitled to the total amount of medicals incurred. Accordingly, we find that the jury erred in awarding $15,000.00 for past medical expenses and we increase that award to $58,-994. 22.
Next, plaintiffs allege that the jury award of $12,000.00 for past lost wages and earning capacity was inadequate.
To recover for actual wage loss, a plaintiff must prove the length of time missed from work due to the tort and must prove past lost earnings. Past lost earnings are susceptible of mathematical calculation from evidence offered at trial. An award h.Jor past lost earnings requires evidence as reasonably establishes the claim, which may consist of the plaintiffs own testimony. An award for past lost earnings is not subject to the much-discretion rule when it is susceptible of mathematical calculation from documentary proof. The plaintiffs uncorroborated, self-serving testimony will not be sufficient to support an award if it is shown that corroborative evidence was available and was not produced. To obtain an award for future loss of earning capacity, a plaintiff must present medical evidence that indicates with reasonable certainty that a residual disability causally related to the accident exists. Future loss of earnings, which are inherently speculative, must be proven with a reasonable degree of certainty, and purely conjectural or uncertain future loss of earnings will not be allowed. [Citations omitted].
Wehbe v. Waguespack, 98-475 (La.App. 5 Cir. 10/28/98), 720 So.2d 1267, 1275, 1276, writ denied, 98-2907, 98-2970 (La.1/15/99), 736 So.2d 211, 213; citing Mathews v. Dousay, 96-858 (La.App. 3 Cir. 1/15/97), 689 So.2d 503.
In this case, the plaintiffs established through introduction of income tax returns that plaintiff had earned approximately $12,000.00 for the years preceding the accident, and also $12,000.00 for 1997, the year in which the accident occurred. At trial testimony further established that, although he did not deliver the papers himself, Mr. Lombas continued with the Times Picayune and subcontracted his brother-in-law to “throw” the papers for him, and therefore he was not totally devoid of income after the accident. Plaintiffs argue that this award fails to include any amounts for loss of earning capacity, a separate element. They allege that plaintiff was starting a business as a commer *1291 cial fisherman and the accident prevented him from continuing in this endeavor. However, plaintiffs failed to present any evidence to show that Mr. Lombas had earned wages as a commercial fisherman, and therefore suffered lost wages as a result of his inability to [^commercially fish. Further, there was no economic testimony of the amount of lost earning capacity, if any, that Mr. Lombas had suffered as a result of his inability to become a commercial fisherman from the date of the accident to the date of his death. Accordingly, we cannot say that the jury erred in its award for past lost wages and earning capacity.
Plaintiffs also challenge the award for loss of consortium, alleging that it is inadequate.
A claim for loss of consortium encompasses seven elements: loss of love and affection; loss of society and companionship; impairment of sexual relations; loss of performance of material service; loss of financial support; loss of aid and assistance; and loss of fidelity. Seagers v. Pailet, 95-52 (La.App. 5th Cir.5/10/95), 656 So.2d 700, 713. A plaintiff need not prove each and every element to bear his burden of proof. Id.
Kistner v. King, 98-641 (La.App. 5 Cir. 12/16/98), 726 So.2d 68, 70.
At the trial of this matter, Mrs. Lombas stated that prior to the accident, Mr. Lom-bas was cheerful but after the accident he was depressed. They could no longer do anything together as husband and wife; he was hurting and did not want to do anything. He could no longer help her with household chores and he could no longer coach his children in athletic activities. The jury made an in globo award of $11,000.00 for loss of consortium to Mr. Lombas’s wife and his three sons. We are unable to ascertain what portion of that award was attributed to Mrs. Lombas and what portion was attributed to each child. Based on the evidence at trial, we cannot find abuse of discretion in the award for loss of consortium.
| ^CONCLUSION
For the above discussed reasons, the judgment of the trial court is amended to award to plaintiffs $117,364.39; (which figure represents $50,000.00 for past pain and suffering; $58,994.22 for past medical expenses and $12,000.00 for past lost wages equaling a total of $120,994.22, subject to a reduction of 3% for plaintiffs fault as found by the jury at the trial of this matter). The award of $10,670.00 for loss of consortium is affirmed. All costs of this appeal are assessed against defendants.
AMENDED AND AFFIRMED.

. Mr. Lombas’s testimony was introduced at trial via deposition.