THERIOT, J.
|2In this personal injury case, the defendant-appellant appeals a judgment rendered by the Nineteenth Judicial District Court in favor of the plaintiff-appellee. The trial court found that the plaintiff-appellee had borne her burden of establishing damages and awarded her a total of-$73,295.44 for medical bills, pain and suffering, loss of enjoyment of life, and loss of income and/or opportunity of income, together with all costs of court and judicial interest, subject to a $50,000 stipulated limit on liability. For. the following reasons, we amend the trial court’s judgment and affirm as- amended.

FACTS AND PROCEDURAL BACKGROUND

Oh October 8, 2012, the plaintiff-appel-lee, Ebony P. Woods, PhD, was involved in a multi-vehicle car accident while traveling to work on Stanford Avenué in Baton Rouge, Louisiana. Dr. Woods’ vehicle was stopped' in traffic in the right turn lane of the road when her vehicle was rear-ended by an SUV, which propelled her vehicle into the car idling in front of her in traffic. The SUV that rear-ended Dr. Woods’ vehicle was driven by Logan Hall, a minor individual insured by the defendant-appellant, Pure Insurance Company (“Pure Insurance”). The SUV was owned by Mr. Hall’s natural tutrix.
Dr. Woods was not treated for any injuries at the scene of the accident. She first sought medical' treatment on October 9, 2012, the day after the accident, at the Baton Rouge General Hospital Emergency Room. Dr. Woods was examined, prescribed medicine to treat pain in her neck and shoulders, and was released. On October 12, 2012, Dr. Woods returned to the hospital with complaints of continuing pain, at which point she was-1 sgiven an injection, prescribed more medication, and again released.[1] On October 22, 2012, Dr. Woods started a course of chiropractic treatment with Dr. Tom Rathmann of the Rathmann . Chiropractic Clinic in Baton Rouge for soft tissue injuries in her neck and back. On February 13, 2013, Dr. Woods was discharged from Dr. Rath-mann’s care after completing a regimen of conservative chiropractic care and general physical therapy. Dr. Rathmann’s final report indicated that Dr. Woods had not *692 suffered any permanent injuries as a result of the accident. Dr. Woods did not seek any further medical treatment after being released from Dr. Rathmann’s care.
On October 4, 2013, Dr. Woods filed a petition for damages in the Nineteenth Judicial District Court for East Baton Rouge Parish against Mrs. Hall, the natural tutrix of Logan Hall, and Pure Insurance. Dr. Woods claimed that she suffered personal injuries as a result of the October 8, 2012 car accident, and asserted that Logan Hall .was reckless, .careless, and negligent in his actions on the date in question by, inter alia, driving in an inattentive and distracted manner, failing.to stop, striking the rear of the preceding vehicle, failing to maintain a.safe distance from other vehicles, driving at an excessive rate of speed, and driving without a license. Dr. Woods claimed that, as a result of Logan Hall’s negligence, she suffered injuries to her shoulder, neck, and leg, and prayed for damages for past, present, and future physical pain and suffering; mental pain, anguish, and distress; medical expenses; lpss .of enjoyment of life; lost wages; and any and all other damages proven at trial.
During the pendency of Dr. Woods’ suit, stipulations were entered by and between the parties. In open court, Pure Insurance acknowledged that it |4issued a policy of insurance that was in in effect and covered Logan Hall on the date in question. Pure Insurance accepted the defense of its insured at trial. Pure Insurance further stipulated as to liability, that is, it acknowledged that Logan Hall was negligent in causing the accident, and stipulated as to the authenticity of medical bills in the sum and total of $6,295.44. Finally, the parties stipulated that the total amount of damages incurred by Dr. Woods did not exceed $50,000.
A bench trial on the merits was held on May 6, 2015. In accordance with the agreement of the parties,, the bench trial was limited to the issues of lost wages and/or income opportunity, pain and suffering, and loss of enjoyment of life. Dr. Woods was the sole witness called to offer testimony before the trial court. On May 21, 2015, the trial court ruled in favor of Dr. Woods, finding that she was entitled to an award of $73,295.44, together with all costs of court and judicial interest, subject to the $50,000 stipulated limit on liability. On June 5, 2015, the trial court signed a written judgment consistent with its bench ruling, awarding Dr. Woods the following specific items of damages:
• Medical bills-$6,295.44;
• Pain and suffering-$20,000;
• Loss of enjoyment of life-$12,000; and
• Loss of income and/or opportunity of income-$35,000.
Pure Insurance timely perfected a suspen-sive appeal from the trial court’s judgment.

ASSIGNMENTS OF ERROR

Pure Insurance raises two assignments of error:
1. The trial court manifestly- erred in awarding Ebony P. Woods the sum of $35,000 in lost income and/or opportunity of income.
|fi2. . The trial court abused its discretion in awarding Ebony P. Woods the sum of $32,000 in general damages for pain and suffering and loss of enjoyment of life.

STANDARD OF REVIEW

It is well-settled that the trier of fact is accorded great discretion in its assessment of' quantum for both general and special *693 damages,[2] Tate v. Kenny, 14-0265 (La. App. 1 Cir. 12/23/15), 186 So.3d 119. Accordingly, the abuse of discretion standard of review applies on appeal to: the trial court’s award for past and future lost wages, pain and suffering, and loss of enjoyment of life. See Brown v. City of Madisonville, 07-2104 (La.App. 1 Cir. 11/24/08), 5 So.3d 874, 887-90, writ denied, 08-2987 (La.2/20/09), 1 So.3d 498.

DISCUSSION

Assignment of Error No. 1

In Pure Insurance’s first assignment of error, it contends that the trial court erred by awarding Dr. Woods $35,000 in lost income , and/or lost opportunity of income.
In order to recover for actual wage loss, i.e., past lost wages, the plaintiff must prove that she would, have been earning wages but for the accident in question. See Boyette v. United Services Auto. Ass’n, 00-1918 (La.4/3/01), 783 So.2d 1276, 1279. It is the plaintiffs burden to prove her past lost earnings and the length of time missed from work due to an accident. Id. See also Cotton v. State Farm Mut. Auto. Ins. Co., 10-1609 (La.App. 1 Cir. 5/6/11) 65 So.3d 213, 224, writ denied, 11-1084 (La.9/2/11), 68 So.3d 522; Lombas v. Southern Foods, Inc., 00-26 (La.App. 5 Cir. 5/30/00), 760 So.2d 1282, 1290. The trial court is accorded broad discretion in assessing an award for lost wages, but there must be a factual basis in the record for the award. See Driscoll v. Stucker, 04-0589 (La.1/19/05), 893 So.2d 32, 53.
Previously, this court has noted that past lost wages are specific in nature and are subject to mathematical computation based upon the proof supplied. See Fox v. Texaco, Inc., 97-2126 (La.App. 1 Cir. 11/6/98), 722 So.2d 1064, 1070. Nevertheless, the jurisprudence does,'not require the plaintiff to prove her lost wages with mathematical certainty. See Lemoine v. Mike Munna, L.L.C., 13-2187 (La.App. 1 Cir. 6/6/14), 148 So.3d 205, 212; Driscoll, 893 So.2d at 53. The plaintiff must instead present proof sufficient.'to establish her claim of past .lost wages to a degree of reasonable certainty; such proof may consist only of the plaintiffs own testimony. See Driscoll, 893 So.2d at 53.
Unlike ah award for past lost wages, awards for loss of future income or loss of-earning-capacity áre not necessarily determined by actual loss, are inherently speculative, and are intrinsically incapable of being calculated with mathematical certainty.[3] See Graham v. Offshore Specialty Fabricators, Inc., 09-0117 (La.App. 1 Cir. 1/8/10), 37 So.3d 1002, 1015; Fontana v. *694 Louisiana Sheriffs’ Auto. Risk Program, 96-1579 (La.App. 1 Cir. 6/20/97), 697 So.2d 1030, 1034. An award for loss of future income or 17loss of earning capacity is not predicated merely upon the difference between the plaintiffs earnings before and after a disabling injury. Such an award also encompasses the loss of one’s earning potential or capacity, that is, the loss of reduction of a person’s capability to do that for which she is equipped by nature, training, and experience, and for which she may receive recompense. Levy, 855 So.2d at 973; Hobgood, 558 So.2d at 1291-92 (quoting Henry v. Nat’l Union Fire Ins. Co., 542 So.2d 102, 106-07 (La.App. 1 Cir. 1989)).
Where an award is predicated upon the difference between the plaintiffs earning capacity before and after a disabling injury, the award “cannot be based purely on speculation, conjecture, and probabilities.” Levy, 855 So.2d at 973. See also Walker v. Bankston, 571 So.2d 690, 697 (La.App. 2 Cir.1990) (“[0]ne who claims an earning incapacity must prove his loss with some reasonable degree of certainty. The award cannot be based on speculation, possibility, or conjecture.”). Oi’dinarily, an award for loss of earning capacity is established by projections from a financial expert that have a factual basis in the record. See Hoagboon v. Cannon, 10-0909 (La.App. 1 Cir. 12/29/10), 54 So.3d 802, 806 (“[T]he award is predicated upon the difference between a plaintiffs earning capacity before and after a disabling injury, usually as established by projections from a financial expert that have a factual basis in the record. The record before us does not contain any such evidence ....”) (internal citations omitted). Though the trier of fact is entitled to discretion in determining the amount of damages, there must be a reasonable basis for its discretion and the record must contain a factual basis for the award. See Walker, 571 So.2d at 697.
We find that the trial court had no reasonable factual basis for awarding Dr. Woods damages for lost past wages. The evidence on record |8shows that, in 2011, prior to the accident, Dr. Woods received a doctorate in music with a concentration in opera singing. Though Dr. Woods periodically performed as a semi-professional opera singer before the accident, in October of 2012, Dr. Woods was employed as an Academic Strategist for the Louisiana State University Athletic Department. Dr. Woods testified that she only, missed a single appointment with a student following the accident as a result of her injuries, and did not indicate whether she lost any wages on account of this cancelled appointment. Though Dr. Woods also claimed she missed an opera audition after the accident, she did not allege or present evidence indicating that she missed any paid opera performances as a result of the accident. In fact, Dr. Woods acknowledged on cross examination that she was paid for multiple professional opera performances in the months following the accident. Because Dr. Woods presented no evidence of actual lost earnings, the trial court had no basis upon which to award Dr. Woods damages for past lost wages.
We likewise find that the trial court had no reasonable factual basis for awarding Dr. Woods damages for diminished earning capacity or loss of future wages, styled in the underlying judgment as lost “opportunity of income.” Dr. Woods did not present any extrinsic evidence, expert testimony, or medical evidence regarding her allegedly reduced earning capacity or establishing a link between her injuries and her purportedly diminished singing ability. In support of her claim for lost opportunity of income, Dr. Woods only offered her own testimony *695 regarding the impact the. accident had upon her current earnings and income potential, and she also demonstrated her operatic skills by performing a song for the trial court.
|nIn principal part, Dr. Woods claimed that, as a result of the accident, she missed out on certain opportunities that negatively impacted her earning potential. Dr. Woods’ testimony centered on one particular audition in New York that was scheduled between one to two months after the accident.[4] Dr. Woods asserted that she was physically unable to drive to the New York audition after the accident, and claimed that she did not have the “stamina” to make it through the necessary operatic arias, noting that she experienced difficulty singing high notes due to painful vibrations in her neck. Dr. Woods compared the missed audition to the “NFL Combine” for professional opera singers. She explained that opera representatives from all around the world attended the audition to hire singers for their respective companies for the following year, and stated that her inability to attend the audition left her unable to work during the entire 2013 opera season, thereby reducing her subsequent earning potential. Dr. Woods testified that although she was currently paid $600 per opera performance, her pay was reduced “because [she] started late.” She averred that a typical three-year opera singer in her position would make between $1000 and $1500 per performance.
On direct examination, Dr. Woods testified that she missed out on an “entire year of singing” as a result of the missed audition and responded in the negative when asked whether she was able to work in the opera season of 2013; ■ However, on cross-examination, Dr. Woods admitted that, she was paid for multiple professional opera performances in the months following the accident, including professional engagements in December.of 2012 and |inJanuary of 2013.[5] Moreover, Dr. Woods acknowledged that she .was not guaranteed employment from the New York audition, had not purchased tickets to the audition at the time of the accident, and could not present documentary evidence indicating whether she had registered for the event. Additionally, Dr. Woods acknowledged that she had not attended the New York audition in 2013 or 2014, the years following the accident and the missed audition, although she testified that she had found employment performing in the European opera circuit. In sum, the only evidence submitted in support of Dr. Woods’ claim for lost opportunity of income was her own speculative, conjectural, and self-serving testimony regarding the effects of one missed audition in New York, testimony that was largely contradicted or undermined by her own admissions and the other evidence on record. Based thereupon, we conclude that the trial court had no reasonable factual basis upon which to award Dr. Woods damages for lost opportunity of income.
Pure Insurance’s first assignment of error has merit. The trial court committed manifest error by awarding Dr. Woods $35,000 in damages for lost income and/or lost opportunity of income.. Because Dr. Woods failed to prove her claim of. lost income and/or lost opportunity of income *696 by some reasonable -degree of certainty, we vacate that portion of the -trial court’s judgment awarding Dr. Woods damages for lost income and/or lost opportunity of income;-. •
| nAssignment of Error No, 2
In .Pure 'Insurance’s second assignment of error, it contends that the trial court erred by awarding Dr. Woods $32,000 in general damages for pain and suffering and loss of enjoyment of life.
In reviewing an award of general damages, the initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the “much discretion” vested in the trier of fact. Batson v. South Louisiana Medical Center, 98-0038 (La.App. 1 Cir. 12/22/00), 778 So.2d 54, 59, writ denied, 01-0960 (La.5/11/01), 792 So.2d 740. See also Hager v. State, ex rel Dept., of Transp. and Develop., 06-1557 (La.App. 1 Cir. 1/16/08) 978 So.2d 454, 472, writs denied, 08-0347 and 08-0385 (La.4/18/08) 978 So.2d 349 (“[T]he trier of fact is free to award that amount of general damages it finds to be most reasonable and appropriate within a vast range of reasonable discretion, considering the nature, duration, and effect of the particular, injuries on the particular plaintiff.”). It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or decrease the award. Batson, 778 So.2d at 59.
In Theriot v. Allstate Ins. Co., the Louisiana Supreme Court explained when appellate courts should- consult prior awards;
Prior awards under similar circumstances serve only as a general guide. If the appellate court determines that an abuse of discretion has been committed, it is then appropriate to resort to a review of prior awards, to determine the appropriate modification of the award. In such review, the test is whether the present award is greatly disproportionate to the mass of past awards for truly similar injuries. In instances where the appellate court is compelled to modify awards, the award will h2only be disturbed to the extent of lowering or raising an award to the highest or lowest point which is reasonably within the discretion afforded the trial court.
625 So.2d 1337, 1340 (La.1993) (internal citations omitted).
In the instant case, Dr. Woods was the only witness who testified at trial regarding the nature and extent of her injuries. As previously noted, Dr. Woods testified regarding the alleged negative impact her injuries had upon her ability to perform in operas, primarily due to painful vibrations in her neck she experienced when attempting to sing high notes. In addition to this testimony, ostensibly related to her loss of enjoyment of life, Dr. Woods also testified regarding the pain and suffering that she experienced. She testified that she experienced “flare-ups” of neck pain, a burning sensation in her shoulders, “issues” with sciatica, and tightening in her hamstring and inner' thigh muscles as a result of the accident.
The medical records submitted into evidence confirm that Dr. Woods was treated for injuries and pain in her neck and back region as a result of the accident. Following the accident, Dr. Woods was diagnosed as suffering from headaches and soft tissue injuries to her neck and back, specifically identified as cervical and thoracic strains/sprains. Dr. Woods’ injuries were primarily addressed through a conservative chiropractic physical therapy regimen over the course of approximately three and *697 a half months. Dr. Woods’ treatment consisted of chiropractic manipulation, manual therapy, electrical stimulation therapy, and hot/cold compress therapy. During the course of Dr. Woods’ treatment, an- MRI was performed on her lumbar region. The ' MRI was negative for any lumbar discopa-thy, i.e., it revealed no deformity, dehydration, bulging, or herniation of Dr. Woods’ lumbar discs. Upon Dr. Woods’ discharge from Dr. Rathmann’s care on February 11S13, 2013, Dr. Rathmann compiled a final report regarding Dr. Woods’ status. The final report clearly states that Dr. Woods had regained a full range of motion in her cervical and lumbar spine, without restriction, and no longer complained of any pain, headaches, or radicular symptoms in her extremities as a result of the car accident. The final report declares: “[Dr. Woods’] prognosis is good and her symptoms have resolved with the utilization of therapy and home exercises.”
Before the trial court, Dr, Woods indicated that she believed Dr. Rathmann’s positive prognosis may have been erroneous, and she testified that she still occasionally experienced pain that she believed was caused by the accident. , On appeal, Dr. Woods argues that the trial court must have accepted her testimony as evidence that she continued to experience pain and suffering and loss of enjoyment of life as a result of the accident following her release from active care by Dr. Rathmann. However, Dr. Woods presented no evidence tending to controvert her chiropractor’s report or establish that her injuries were in fact more severe than the short-term soft tissue injuries described by the medical records. Indeed, Dr. Woods admitted that she had not sought any further medical treatment for her injuries after she completed her regimen of general chiropractic physical therapy with Dr. Rath-mann. Based upon the medical evidence, which details the limited and non-permanent nature of Dr. Woods’ injuries, and in light of the otherwise sparse evidence regarding Dr. Woods’ pain and suffering and loss of enjoyment of life, we conclude that the trial court abused its discretion by awarding Dr. Woods a total of $32,000 in general damages.
Having found from'our review of the specific facts and circumstances peculiar to this case that the trial court abused its discretion, we turn to the | tissue of what compensatory damages the trial court should have awarded. In order to determine the appropriate general damage award, it is necessary to examine prior awards in similar cases involving short-term soft tissue injuries to the neck and/or back.[6] Comparing the nature and extent *698 of Dr. | ^Woods’ injuries with comparable jurisprudence, -we find that the highest amount of general damages the trial court could have reasonably awarded Dr. Woods was $22,500.
Pure Insurance’s second assignment of error has merit. The trial court abused its discretion by awarding Dr. Woods $32,000 in general damages for pain and suffering and loss of enjoyment of life. We therefore amend the trial court’s judgment and reduce the general damage award from $32,000 to $22,500.

CONCLUSION

For the foregoing reasons, the judgment of Nineteenth Judicial District .Court is amended and, as amended, is affirmed. We vacate that portion of the trial court’s judgment awarding Dr. Woods damages for lost income and/or lost opportunity of income and reduce the general damage award from $32,000 to $22,500. In all other respects, the trial court’s judgment is affirmed. Costs of this appeal are assessed to the plaintiff-appellee, Ebony P. Woods, PhD.
VACATED IN PART, AMENDED IN PART; AFFIRMED AS AMENDED.
McLENDON, J. concurs in the result reached by the majority.

. Dr. Woods testified that she returned to the hospital on October 10, 2012, but the medical records submitted into evidence indicate that she returned to the hospital two days later, on October 12, 2012.

. General damages are those damages that cannot be fixed, with pecuniary exactitude, including mental or physical pain or suffer-1 ing, inconvenience,' loss 'of intellectual gratification, or loss of physical enjoyment, or other losses of life or lifestyle that cannot be definitively measured in monetary terms. Special damages are those damages with a “ready market value," such that the amount of the damages theoretically may be determined with relative certainty, including medical expenses and lost wages. See Kaiser v. Hardin, 06-2092 (La.4/11/07), 953 So.2d 802, 808-10.

, In this case, the trial court awarded Dr. Woods damages for "lost income and/or opportunity of income.” It appears that this in globo award was intended to cover any pecuniary losses incurred by Dr. Woods, including lost past wages, lost future wages, and lost earning capacity. Herein, we address the issue of lost future wages and lost earning capacity together because, whether the award is styled as .lost future income or lost earning capacity, the same substantive law applies. See and compare Levy v. Bayou Indus. Maintenance Services, Inc., 03-0037 (La.App. 1 Cir. 9/26/03), 855 So.2d 968, 973, writs denied, 03-3161 and 03-3200 (La.2/6/04), 865 So.2d 724, 727; Hobgood v. Aucoin, 558 So.2d 1285, 1291-92 (La.App. 1 Cir.1990), affirmed by, 574 So.2d 344 (La.1990).

. There is conflicting evidence regarding the date of the New York audition, which took place either in November or December of 2012.

. The evidence before this court includes a list of professional engagements undertaken by Dr. Woods. The list confirms that Dr. Woods was hired as a professional opera singer for seyeral performances in 2012 and 2013, though the specific date for each engagement is not determinable from the face of the document.

. An extensive body of pertinent jurisprudence guides our decision in this matter. See e.g., Lohenis v. Rousse, 14-1078 (La.App. 1 Cir. 3/9/15), 166 So.3d 1020, 1031 (awarding $15,000 in general daniages to, plaintiff who suffered from difficulty swallowing, neck pain, lower back pain, and elbow pain after an accident aggravated preexisting neck and back injuries, where it was indeterminable when his chronic neck and back pain returned to its pre-accident state); Pittard v. Lewis, 45,412 (La.App. 2 Cir. 8/11/10), 46 So.3d 202, 204-05 (affirming $18,000 in general damages'to plaintiff who suffered injuries to his neck 'and back, along with á facial contusion and closed héad injury, where his soft tissue cervical and lumbar injuries were initially treated over the course of approximately two months, but where the symptoms of his injuries'had not resolved by the time of trial); Lee v. Briggs, 08-2120 (La.App. 1 Cir. 9/10/09), 23 So.3d 362, 365 (reducing general damage award from $10,000 to $6,225 where plaintiff suffered neck and back injuries and was treated by a chiropractor over a total period of approximately four months); Bennett v. Louisiana Farm Bureau Cas. Ins. Co., 43,216 (La.App. 2 Cir. 4/30/08), 983 So.2d 966, 975 (awarding $20,000 in general damages to' plaintiff who suffered soft tissue back injuries, including a lumbar strain, where plaintiff was treated through eight months of *698 physical therapy and still experienced some' residual pain thereafter); Ursin v. Russell, 07-859 (La.App. 5 Cir. 2/6/08), 979 So.2d 554, 560 (affirming $7,500 general damage award to plaintiff who suffered soft tissue injuries to the neck and back region, where plaintiff underwent approximately six months of chiropractic treatment); Williams v. Roberts, 05-852 (La.App. 5 Cir. 4/11/06), 930 So.2d 121, 122-24 (reducing general damage award from $14,000 to $7,500 to plaintiff who suffered from cervical, thoracic, and lumbosa-cral spine injuries, where plaintiff’s injuries resolved after three months of conservative chiropractic care); Volion v. Henry, 04-294 (La.App. 5 Cir. 10/26/04), 888 So.2d 265, 272 (affirming $6,000 general damage award to plaintiff who suffered from soft tissue .injuries to the neck, back, and arm, where plaintiff was treated by a chiropractor for approximately six to seven months, but suffered from residual pain thereafter and proved the possibility of permanent injury); Caruso v. Canal Indemnity Co., 03-423 (La.App. 5 Cir. 9/16/03), 858 So.2d 31, 34-35 (reducing general damage award from $25,000 to $17,500 to plaintiff who sustained head and neck injuries treated conservatively for approximately sixteen months, where plaintiff complained of continuing pain thereafter, but where medical records did not support the alleged ongoing nature of the injuries); Marcum v. Johnston, 32,634 (La.App. 2 Cir. 1/26/00), 750 So.2d 1186, 1190-91 (affirming $10,000 general damage award to plaintiff who suffered from soft tissue injuries to the neck and lower back, where plaintiff was given a ‘‘fairly good prognosis” after over two years of treatment, but where medical evidence indicated plaintiff could remain symptomatic for an indefinite period thereafter); Dufrene v. Gaddis, 08-1294 (La.App. 5 Cir. 6/1/99), 738 So.2d 75, 81-82, writ denied, 99-1867 (La.10/8/99), 751 So.2d 220 (affirming $9,000 general damage award to plaintiff treated for soft tissue back injuries by a chiropractor over the course of eight months); Jimmerson v. Rearden, 98-1120 (La.App. 3 Cir. 3/3/99), 736 So.2d 916, 920-21 (increasing award of general damages from $2,000 to $7,500 to plaintiff who suffered from pain and stiffness in the cervical and lumbar regions, where plaintiff was treated by a chiropractor over the course of approximately six months); Quirk v. Bd. of Supervisors of Louisiana State University, 629 So.2d 1345, 1347 (La.App. 4 Cir.1993) (affirming $17,500 general damage award to plaintiff who suffered from a mild contusion, neck strain, lower back strain, and left wrist strain, where plaintiff was treated for the cervical sprain for seven to eight months and her soft tissue injuries had not resolved at the time of trial over two and a half years later).